# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

| | |
|---|---|
| **CARLOS TONATIUH  HERNANDEZ, JR., a/k/a** | ) |
| **CARLOS TONATIUH  HERENANDEZ  STAUFERT** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **MICHAEL W. MEADE, District Director** | ) |
| **Miami Field Office** | ) |
| **U.S. Immigration and Customs Enforcement** | ) |
| **U.S. Department of Homeland Security** | ) |
| **in his Official Capacity and his successors and assigns,** | ) |
| | ) |
| **CYNTHIA LAWSON, Warden** | ) |
| **Broward Transitional Center, Individually and** | ) |
| **in her official capacity and her successors and assigns,** | ) |
| | ) |
| **ALEJANDRO MAYORKAS,  Secretary** | ) |
| **U.S. Department of Homeland Security,** | ) |
| **in his official capacity and his successors and assigns,** | ) |
| | ) |
| **TAE D. JOHNSON, Acting Director** | ) |
| **U.S. Immigration and Customs Enforcement** | ) |
| **in his official capacity and his successors and assigns,** | ) |
| | ) |
| **ANTHONY BLINKEN, Secretary** | ) |
| **U.S. Department of State** | ) |
| **in his official capacity, and his successors and assigns** | ) |
| | ) |
| **MERRICK GARLAND, Attorney General** | ) |
| **U.S. Department of Justice, in his official capacity** | ) |
| **and his successors and assigns,** | ) |
| | ) |
| **NELSON PEREZ, Chief Counsel,** | ) |
| **Office of the Principal Legal Advisor, Individually and** | ) |
| **in his official capacity and his successors and assigns** | ) |
| | ) |
| **ARTHUR MCLAUGHLIN, U.S. Immigration and** | ) |
| **Customs Enforcement, Department of Homeland** | ) |
| **Security, Individually and in his official capacity and** | ) |

his successors and assigns                                          )
**MITCHELL DIAZ,  U.S. Immigration and Customs**                    )
**Enforcement, Department of Homeland Security,**                   )
**Individually and in his official capacity and his**               )
**successors and assigns,**                                         )
                                                                    )
**TOMMY TOWNER,. Special Agent, U.S.  Department of**               )
**State Diplomatic Security Service, Individually and in**          )
**his official capacity and his successors and assigns;  and**      )
                                                                    )
**EVEGELIA SOLOMOS,  Individually and**                             )
**in her official capacity and her successors and assigns**         )
                                                                    )
   **Respondents.**                                                 )
_____)

## PETITION FOR WR IT OF HABEAS CORPUS
## FOR DECLARATORY RELIEF UNDER 28 U.S.C §2201
## AND FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT,
## 28 U.S.C. §2671-2680

## INTRODUCTION

1.    Petitioner,  **CARLOS TONATIUH HERNANDEZ. JR.,** a/k/a **CARLOS TONATIUH**

**HERNANDEZ STAUFERT**, (as named by the Department of Homeland Security), by and

through undersigned counsel, respectfully petitions this Court for a Writ of Habeas Corpus to

review the lawfulness of his detention by Respondents from September 18, 2022 through

November 17, 2022, and of the continued exercise of control over him and infringement upon his

liberty by the placement of a GPS monitor on his ankle upon his release.  Petitioner's continued

detention is unlawful because it is a violation of the Respondent's due process rights under the

United States Constitution.  See, e.g., *Yamataya v. Fisher*, 189 U.S. 86, 100-101 (1903) ("[T]his

Court has never held, nor must we now be understood as holding, that administrative officers,

when executing the provisions of a statute involving the liberty of persons, may disregard the

fundamental principles that inhere in "due process of law.").   Petitioner's continued detention is also unlawful as it arose from a warrantless arrest, violating his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizsures, as more fully set forth herein, at the hands of U.S. Immigration and Customs Enforcement and the U.S. Department of Homeland Security.

2.     Petitioner, a United States Citizen, was arrested by U.S. Immigration and Customs Enforcement ("ICE") and held in detention without bond since September 18, 2022.  Petitioner was entitled to immediate release from detention, without further infringements upon his liberty by the placement of an ankle monitor, but the Department of Homeland Security, Office of the Principal Legal Adviser, and Department of State refused to let him go without continued control upon him.  The Department of Homeland Security, Immigration and Customs Enforcement, and the Office of the Principal Legal Adviser, all still refuse to acknowledge that the basis for his unlawful arrest and detention was an invalid document, specifically, a document that has been found to be "devoid of probative value and should be considered as forged" under the laws of the country in which it was issued, and therefore, invalid in the United States and in removal proceedings in Immigration Court.

3.     The Immigration Judge entered an Order terminating proceedings on October 18, 2022, because the Department of Homeland Security failed to meet its burden of proof by clear and convincing evidence to establish that the Petitioner was removable.  On November 15, 2022, the Immigration Judge further denied a Motion to Reconsider Termination filed by the Department of Homeland Security on October 18, 2022 in a lengthy decision ("Exhibit A").  The Immigration Judge specifically found that the Petitioner is a United States Citizen and native who was born in

3

Ogden, Utah, on April 1, 1995, and a Mexican citizen as well.  The proceedings were terminated, but the Office of the Chief Counsel immediately filed a Notice of Appeal with the Board of Immigration Appeals.  The Department of Homeland Security, Immigration and Customs Enforcement did not intend to release him until the Board of Immigration Appeals has ruled on their appeal from the Immigration Judge's decision, and although they have now, after orders from "HQ," reluctantly released him, they are still restricting his liberty by the placement of an ankle bracelet on his body.  They have further confiscated his United States passport to infringe upon his right to travel.

4.      The detention of the Petitioner, a United States Citizen, and the further control upon him and infringements of his rights by the placement of the ankle bracelet has caused and will continue to cause extreme and irreparable hardship to him and his family, and it violates the Immigration and Nationality Act, controlling Federal Court precedent, regulations of the Department of Homeland Security, Immigration and Customs Enforcement and Petitioner's due process rights under the United States Constitution.

## JURISDICTION

5.      This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 *et seq.,* and the Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq*.  This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §2241 *et seq*; Art. 1, §9, Cl. 2 of the United States Constitution (the "Suspension Clause"), and 28 U.S.C. §1331, as Petitioner was in custody and still is physically detained under the color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States.  *See, Zadvydas v. Davis*, 533 U.S. 678 (2001).  This Court has the

power to grant writs of habeas corpus pursuant to 28 U.S.C. §2241.  This Court may grant relief

pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, et seq., and the All Writs Act, 28

U.S.C. §1651.

6.      Use of the Writ of Habeas Corpus to challenge detention by ICE is available after the

REAL ID Act of 2005, Pub. L. No. 109-13, 119m Stat. 231 (May 11, 2005) ("REAL ID

Act").  Section 106( c) of Title 1 of the REAL ID Act, amending INA §242(a)(2)(A), (B) and (

C), and §242(g), although limiting habeas jurisdiction applies only to those challenges to a "final

administrative order of removal."  *Nnadika v. Att'y Gen. Of the United States*, 484 F.3d 626, 632

(3d Cir. 2007) (holding that the proper venue for a habeas petition challenging detention remains

with the district court); see also *INS v. St. Cyr*, 533 U.S. 289, 314 (2001) ("The writ of habeas

corpus has always been available to review the legality of executive detention."); *Aguilar v. ICE*,

510 F.3d 1, 11 (1st Cir. 2007) ("[W]e have held that district courts retain jurisdiction over

challenges to the legality of detention in the immigration context."); *Bonhometre v. Gonzales*,

414 F.3d 442, 446 n.4 (3d Circ. 2005) ("An alien challenging the legality of his detention still

may petition for habeas corpus [post-REAL ID]"); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 483-85

(E.D. Va. 2007).

## **VENUE**

7.      Venue is properly with this Court pursuant to 18 U.S.C. §1391( c) because Respondents

are employees or officers of the United States or under contract with the United States, acting in

their official capacity, and an agency of the United States, and Petitioner is under their control;

because Petitioner was detained by and is still under the control of ICE at Broward Transitional

Center in Pompano Beach, Florida, which is under the jurisdiction of this District; because a

substantial part of the events or omissions giving rise to the claim occurred in this District; and because the government's decision to hold Petitioner in custody and to monitor him through a GPS ankle bracelet and his administrative proceedings occurred in this District.

## PARTIES

8.      Petitioner, **CARLOS TONATIUH HERNANDEZ, JR**., is a 27 year old male citizen and native of the United States, having been born in Ogden, Utah, on April 1, 1995.  He was awakened and arrested in his cabin on board a Royal Caribbean Cruise Line ship that had docked, but had not disembarked, in the early morning hours on Sunday, September 18, 2022. He was handcuffed and taken first to Krome Detention Center and then to and detained in ICE custody at the Broward Transitional Center, in Pompano Beach, Florida from September 18, 2022 through November 17, 2022.  Upon his release, he is still under the control of Immigration and Customs Enforcement through a monitored GPS ankle bracelet with required reporting at Immigration and Customs Enforcement on November 30, 2022.

9.      Respondent, **MITCHELL W. MEADE**, is the District Director of the Miami Field Office of the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  ICE is the component of DHS responsible for detaining and removing aliens according to U.S. immigration law.  In his official capacity, he is the legal custodian of the Petitioner.

10.     Respondent, **CYNTHIA LAWSON**, is the Warden of Broward Transitional Center, where Petitioner was detained at the behest of ICE.  In her official capacity, she is the legal custodian of the Petitioner.

11.     Respondent**, ALEJANDRO MAYORKAS**, is the Secretary of the Department of

6

Homeland Security.  He is responsible for the administration of ICE and the enforcement of the INA.  In his official capacity, he is the legal custodian of the Petitioner.

12.      Respondent**, TAE D. JOHNSON**, is the Acting Director of U.S. Immigration and Customs Enforcement.  In his official capacity as the head of ICE, he is the legal custodian of the Petitioner.

13.      Respondent**, ANTHONY BLINKEN** is the Secretary of the U.S. Department of State. He is responsible for the administration of the Department of State and any investigations undertaken by the Department of State of the Diplomatic Security Service and its Special Agents. In his official capacity, under the facts of this case, he is responsible for the actions of the Department's Special Agent and the conduct of the investigation of the Petitioner which led to the detention of the Petitioner.

14.      Respondent, **MERRICK GARLAND** is the Attorney General of the United States.  He is responsible for administration of the Executive Office for Immigration Review, which includes the U.S. Immigration Courts and the Board of Immigration Appeals.

15.      Respondent, **NELSON PEREZ**, is the Chief Counsel for the Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of Homeland Security. He is responsible for the administration of OPLA at the Broward Transitional Center, where the Petitioner is detained.   In his official capacity, he is the legal custodian of the Petitioner. Individually, he is responsible for the unlawful detention and continued monitoring of and contol over the Petitioner, a United States Citizen.

16.      Respondent, **ARTHUR MCLAUGHLIN**, is the ICE Detention Officer assigned to the Petitioner at Broward Transitional Center.  In his official capacity, he is the legal custodian of the

Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of and control over the Petitioner, a United States Citizen.

17.     Respondent, **MITCHELL DIAZ**, is the ICE Supervisor assigned to the Petitioner Petitioner at Broward Transitional Center.  In his official capacity, he is the legal custodian of the Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of and control over the Petitioner, a United States Citizen.

18.     Respondent, **TOMMY TOWNSEND**, is a Special Agent for the U.S. Department of State, Diplomatic Security Service.  In his official capacity, he conducted an investigation into the Petitioner based upon an invalid document and an incomplete investigation.  Individually, he is responsible for conducting an investigation of the Petitioner relying upon an invalid document, leading to the arrest and the unlawful detention of the Petitioner, a United States Citizen.

19.     Respondent, **EVEGELIA SOLOMOS**, is the Assistant Chief Counsel for the Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of Homeland Security.  In her official capacity, she is the government's attorney responsible for the removal proceedings conducted by OPLA at the Broward Transitional Center, where the Petitioner was detained.   In her official capacity, she is the legal custodian of the Petitioner. Individually, she is responsible for the unlawful detention and continued monitoring and control of the Petitioner, a United States Citizen.

## STATEMENT OF FACTS

20.     Petitioner, **CARLOS TONATIUH HERNANDEZ, JR**., is a 27 year old United States Citizen.  He was born in the home of his grandmother, Conchita Staufert, in Ogden, Utah on April 1, 1995.  His mother, Ingrid Staufert Roldan, had entered the United States on January 28,

1995, intending to do some baby shopping with her mother and her sister, Adriana Bury, who at that time, resided in Ogden, Utah, a few blocks away from her mother, Petitioner's grandmother, Conchita Staufert.

21.     Conchita Staufert had been struggling with recurrent breast cancer which was first diagnosed in the early 1990s.  Her daughter, Ingrid, the Petitioner's mother, was one of three daughters, and she was Conchita Staufert's caregiver for a decade as she struggled with cancer, which ultimately took her life on September 1, 1999.  Ingrid was also the caregiver for her father, who was dying of AIDS in Mexico and ultimately passed away in 1995, a few months after the Respondent's birth.

22.     Ingrid's plan to leave the United States to return to Mexico was interrupted when Conchita had a health crisis, and she remained in the United States and gave birth at Conchita's home.  Conchita, a friend, and a midwife all assisted in the Petitioner's delivery.  Ingrid's Mexican passport expired prior to the Petitioner's birth, on March 19, 1995, but by that time, she was also unable to fly as it was too late into her pregnancy.

23.     On April 1, 1995, Ingrid called Petitioner's father, Carlos Hernandez Sanchez, in Mexico, to tell him of the birth of his son.  Carlos was excited, but frustrated that he could not be in attendance at his son's birth.  Unbeknownst to Ingrid, Carlos registered the Petitioner's birth in Mexico a few days after he was born.  He did not tell Ingrid that he had done this for a month or more.

24.     Ingrid registered the Petitioner's birth several weeks after his birth, the delay owing to her responsibilities caring for her newborn, nursing him, and caring for her mother.  Ingrid also did not have a car to go to the office of Vital Statistics to register the Petitioner's birth.

25.     Ingrid traveled back to Mexico in early May, 1995, as her father had a health crisis, and returned to the United States on May 20, 1995. Thereafter, she traveled back and forth between Mexico and the United States, as needed to care for her mother and father during their respective health crises, and when she took the Petitioner with her, presented border crossing cards that she completed using his Mexican birth certificate, as she did not have his United States birth certificate.  Ingrid ultimately found the Petitioner's United States birth certificate in a file drawer after Conchita's death when she was clearing out her house to sell it.

26.     After Conchita's death, Ingrid's sister Adriana moved to New Jersey in connection with her very demanding employment.  Carla, Ingrid's other sister, lived in Mexico at the time of the Petitioner's birth, until she later moved to the United States in1996.  There was therefore no family left in Utah for the Petitioner to live with, and he returned to Mexico with his parents.

27.     Petitioner attended day care and Pre-K in Ogden, Utah, and elementary and middle school and part of high school in Veracruz, Mexico.  When he was in high school, his aunt Carla moved to Austin, Texas, and Petitioner requested to live there with her, as he was a citizen of the United States.  He attended Bowie High School in Austin, Texas.  Petitioner asked his aunt Carla to help him apply for a United States passport, and on October 23, 2014, Petitioner received his United States passport from the passport agency, without incident.

28.     Petitioner graduated from high school at Bowie High School and enrolled in college at Briar Cliff University in Sioux City, Iowa, where he was awarded a soccer scholarship. Petitioner traveled on his United States passport on several occasions, to Europe, to South America and to Honduras to volunteer with his church, all without incident.

29.     Petitioner began working at Unity Point Health, in Sioux City, Iowa, one half of the time at the phlebotomy unit taking blood samples of patients, and one half of the time in the overnight

10

shift of the mental health unit.   He was promoted and received a raise in the summer of 2022 and

decided to reward himself with a vacation on board a Royal Caribbean Cruise Line ship for a

seven day cruse to the Bahamas, ending in Labadee, Haiti, with his roommate.

30.     Before dawn on Sunday, September 18, 2022, Petitioner was in his cabin, sleeping, as the

ship docked in Miami, but had not yet disembarked.  He had been out late the night before with

his roommate celebrating their cruise.  He answered the door and two ICE officers told him that

he needed to come with them.  Petitioner was taken into custody in his cabin by the officers who

barely gave him time to grab his belongings.  Petitioner had luckily started to pack the night

before, although he still doesn't know if he left things because everything was so fast.

31.     Immigration and Customs Enforcement escorted him off the ship and once he was off

they handcuffed him and told him there were "some irregularities with him."  He asked if it was

necessary to handcuff him and they told him it was "protocol."  Petitioner was not advised why

he was being arrested, nor of the charges against him.   They took his belongings and then took

him to Krome Detention Center.   Without reading him his rights, Immigration and Customs

Enforcement began to  question him.  They took his Record of Sworn Statement in Proceedings

under Section 235(b)(1) of the Act before advising him of the charges against him, and before he

was improvidently placed in removal proceedings. After some time, they told him he was going

to be transferred and then they took him to Broward Transitional Center, 3900 N. Powerline

Road, Pompano Beach, Florida, where he was detained until November 17, 2022 at 8:00 a.m.,

one day less than two months after he arrived.

32.     The Department of Homeland Security, Immigration and Customs Enforcement held

Petitioner for five days at Broward Transitional Center, without advising him of the charges

against him.  On September 22, 2022, Petitioner was finally advised of the charges against him,

by service of a Notice to Appear dated September 21, 2022 upon him.  The charges in the Notice

to Appear were that he had made false claims to United States Citizenship, that he procured an

immigration benefit by fraud, and that he had attempted to enter the U.S. without a valid entry

document.

33.     The third charge was without foundation because the Petitioner had a valid United States

passport in his possession on September 18, 2022.   On September 21, 2022, Petitioner's

passport was revoked, but on September 18, 2022, when he was arrested, the passport was valid.

Notwithstanding, despite the clear lack of foundation for the charge, the Department of

Homeland Security charged Petitioner as an "Arriving Alien, " thus rendering him ineligible for

bond, so that they could continue to detain him.

34.     The two other charges stemmed from a referral from a Passport Agency that issued

Petitioner a United States passport on October 23, 2014, to the State Department, after

identifying a Mexican birth certificate for the Petitioner with a date that was earlier than that

appearing on his United States passport.  That Mexican birth certificate, which has been

identified as "devoid of any probative value and shall be considered as forged," and thereby

declared invalid, under the laws of Mexico where it was issued, was relied upon by the U.S.

Department of State, Diplomatic Security Service, led by Investigator Tommy Towner, to initiate

an investigation which led to the unlawful arrest and detention of the Petitioner.  The entirety of

the investigation, the arrest, the detention, and the charges against the Petitioner were based upon

an that invalid document.

35.     Undersigned counsel filed an E-28 Notice of Appearance Before the Immigration Court

on September 28, 2022 and on September 29, 2022, filed a Motion to Terminate, attaching the

Petitioner's United States birth certificate and his United States Passport, and arguing that the Immigration Judge did not have jurisdiction over the Petitioner, who was a United States Citizen.

36.     The Office of the Principal Legal Advisor, Nelson Perez, and Evagelia Solomos, Assistant Chief Counsel filed the evidence that it had to support the Notice to Appear issued on September 21, 2022 in a Notice of Filing on September 30, 2022.  This consisted of the Mexican birth certificate, which had not been translated from Spanish into English, and a letter from the State Department revoking his United States passport, based upon the Mexican birth certificate.

37.     At an initial Master Calendar, undersigned counsel argued that the Immigration Judge did not have jurisdiction over the Petitioner, who was a United States Citizen.  In support, beyond the previously filed United States birth certificate and United States Passport, undersigned counsel filed a Declaration Under Penalty of Perjury of Adriana Bury, Petitioner's aunt and Ingrid's sister, attesting to the fact that she was present on the day of the Petitioner's birth in Ogden, Utah, arriving a few hours after his birth, and a Vaccination Certificate from the Department of Health for the State of Utah, for the Respondent, reflecting vaccinations beginning in early June, 1995.

38.     The Immigration Judge stated that he wanted more time to hear full argument and receive evidence and set a special set hearing for October 14, 2022.

39.     On October 11, 2022, the Department of Homeland Security filed an Opposition to the Motion to Terminate and the Amended Motion to Terminate.  The basis for the Government's Opposition was an investigation by the U.S. Department of State initiated after learning that the registration of the Respondent's birth in Mexico on the invalid Mexican birth certificate, was dated on a date prior to the date of registration of his birth in the United States.

The Government argued that the United States birth certificate was a fraud because of the earlier date of the Mexican birth certificate.  Because of that, the Government alleged, the Respondent's United States passport was obtained by fraud.  The Government went further, however, in arguing that the Respondent's Texas driver's license was also obtained by fraud, and that there was inherent fraud in the Respondent's entries into the United States prior to obtaining his United States passport, where the Respondent entered using a Mexican passport and a United States issued B2 visitor's visa, and that these entries were numerous.

40.     The parties appeared for hearing on October 14, 2022, and the Immigration Judge refused to consider the Mexican birth certificate filed by the Department of Homeland Security, Office of the Principal Legal Advisor, because it was in Spanish without the required English translation.

41.     Undersigned counsel immediately moved the Court to dismiss and terminate, as the Department of Homeland Security had no evidence and therefore, could not meet its burden of proof to prove alienage by clear and convincing evidence, at which point the Immigration Judge did not have jurisdiction over the Petitioner, a United States citizen.

42.     The Assistant Chief Counsel, Evagelia Solomos, announced that she would "prove her case through the Respondent," to which undersigned counsel vigorously objected, citing *Matter of Tang*, 13 I&N Dec. 691, 692 (BIA 1971) ["Upon presenting evidence that the respondent is an alien, the Service may call upon him to testify and may use his testimony to find that deportability is established"]; 8 CFR §§1240.10(c) & (d).   Respondent's counsel argued that the Government could not meet its burden to establish alienage by clear and convincing evidence and could not use the Respondent's testimony to meet that burden.  Respondent's counsel further argued that it constituted impermissible burden shifting as discussed in detail in *Murphy v. INS*,

54 F. 3d 605 (9ᵗʰ Cir. 1995) and numerous cases cited therrein.   The Immigration Judge read

portions of the decision in *Matter of Tang, supra*, into the record, and, not finding the portion of

the case cited by the Respondent's counsel, stated that the case did not stand for the proposition

put forth by Respondent's counsel.  The Immigration Judge then stated that he was not bound by

precedent set in the 9ᵗʰ Circuit in *Murphy v. INS*, 54 Fed.3d 605 (9ᵗʰ Cir. 1995) which was only

persuasive in the absence of case law in the 11ᵗʰ Circuit.  The Immigration Judge stated that the

Government could establish alienage through cross-examination of the Respondent.

43.     The Immigration Judge allowed the Assistant Chief Counsel to question the Respondent

over vigorous objections by undersigned counsel, which were all overruled.  At one point, the

Assistant Chief Counsel announced that she needed a bathroom break, the proceedings were

adjourned, and when she returned, an English translation of the Mexican birth certificate

suddenly appeared in the docket, again, over objections from undersigned counsel.

44.     After over three hours of hearing, the Immigration Judge entered an Order terminating

proceedings on October 18, 2022, based upon the fact that the Department of Homeland Security

had fully failed to meet its burden to establish alienage at the special set hearing on a contested

Notice to Appear.  Although none of what the Immigration Judge had dictated was a part of the

Order of October 18, 2022, undersigned counsel filed a Motion to Modify or Redact any

testimony by the Petitioner or Ingrid, his mother, on October 18, 2022, before the Order was

entered, which has never been ruled upon.

45.     The Department of Homeland Security filed a Motion to Reconsider Termination on

October 18, 2022, before the Order was entered, claiming that Ingrid was untruthful in her

testimony.  The basis for the Motion to Reconsider was a search conducted after the hearing on

"entry/exit" records, stating that these revealed that Ingrid was not present in the United States on the date of the Petitioner's birth, and that a search of records in Utah did not reveal a certificate as a nursing assistant for Conchita Staufert, Ingrid's mother, as she testified.  The Immigration Judge entered an Order directing the Petitioner to file a response to the Motion to Reconsider Termination within ten (10) days, or October 28, 2022 or the Motion to Reconsider Termination would be deemed unopposed.

46.     On October 28, 2022, Petitioner's counsel filed a Response to the Motion to Reconsider Termination.  Initially, Petitioner argued that a Motion to Reconsider could not rely upon new facts, but rather, an error in the application of the law, which was not the case as the Order of the Immigration Judge terminated proceedings because the Department of Homeland Security had failed to meet its burden to establish alienage by clear and convincing evidence.  Petitioner attached as exhibits Petitioner's mother's Mexican passport issued on March 20, 1990 which expired on March 19, 1995, contained an entry stamp in Dallas, Texas, on January 28, 1995, fully refuting the claims regarding "entry/exit" records.   Petitioner also attached certificates issued in Long Beach, California, where Conchita Staufert was certified as a medical assistant, fully refuting the claim regarding Petitioner's mother's truthfulness regarding her own mother's certifications.  Petitioner also attached the Affidavit of Petitioner's mother, attesting to the facts surrounding Petitioner's birth, and the Affidavit of Petitioner's father, attesting to the fact that he had registered the birth without telling his wife for six or seven weeks, consistent with an Affidavit filed in response to the Opposition to Motion for Termination that she did not learn that her husband had registered the Petitioner's birth until several weeks later when she was advised that she needed to return to Mexico to care for her own father .   Petitioner also attached an

16

Affidavit of Adriana Bury, Petitioner's aunt, attesting to the fact that she was present on April 1, 1995 when Petitioner was born, and the next day, and although the day after that was a workday and she was at work, that she was in communication with Ingrid and that she babysat for Petitioner on numerous occasions in Ogden, Utah, after his birth.

47.    Of greater importance, however, was an exhibit to the Response to the Motion to Reconsider Termination containing a full translation of the Mexican birth certificate, as the translation uploaded in a hurry during hearing on October 14, 2022 only translated select portions of the birth certificate, the names and dates and places that were already in English in the document.  That fully translated Mexican birth certificate revealed that the certification of the electronic birth certificate was not signed - "Fallo la firma" which means, "Signature failed."   As set forth in Exhibit "B" hereto, an attorney in Mexico reviewed the document and provided an Informative Note that identified the Mexican civil law regarding electronic filing of documents in Vital Statistics and stated that the document filed by the Department of Homeland Security was contrary to Mexican law, as in order to be valid, the electronic document must contain the name, address and signature of the individual certifying the document.  As a result, the opinion of the Mexican attorney was that under Mexican law, the Mexican birth certificate was "devoid of any probative value, and shall be considered as forged." (Exhibit "B").

48.    Petitioner also argued that as a United States Citizen, his arrest, detention, and charges levied against him placing him in removal proceedings violated Immigration and Customs Enforcement's own regulations, which stated: If  the evidence indicates that a person is a United States Citizen, or if the evidence outweighs contrary evidence, the individual should not be arrested or taken into custody and no Notice to Appear should be issued.  Memo, Morton, Ass't

Sec., ICE Superceding Guidance on Reporting and Investigating Claims to United States

Citizenship, Policy No. 16001.1. FEA No. 045-01 (Nov. 19, 2009), reprinted in 15 Bender's

Immigration Bulletin 438, 464-66 (Mar. 15, 2010).   If [there is] probative evidence that the

detainee is a USC, he should be released.   In any case in which there is uncertainty about

whether the evidence is probative of USC, ICE should not detain, arrest, or lodge an immigration

detainer against the individual and should cancel any immigration detainer already lodged by

ICE**.**  Also, ICE has an affirmative obligation to train state and local officers under 287(g)

agreements in this memo.  ICE Policy Guidance 16001.2, Investigating the Potential U.S.

Citizenship of Individuals Encountered by ICE (Nov. 10, 2015), AILA Doc. No. 19051332.

49.     The Department of Homeland Security did not stop when they learned that the entire

basis of their investigation begun in 2014, and the arrest, detention, and charges against the

Petitioner eight years later were based upon an invalid document.

50.     On November 4, 2022, without leave or order of Court, the Assistant Chief Counsel filed

a "wet" birth certificate purportedly signed by the Petitioner's mother on April 3, 1995 in

Mexico, to support its claim that the Petitioner's mother could not have been in Ogden, Utah on

April 1, 1995.

51.     In response, on November 7, 2022, Petitioner filed his Response attaching as exhibits an

Affidavit of Petitioner's mother that she did not sign the  "wet" birth certificate and that the

signature was not hers.  In support, Petitioner's mother attached seven exemplars of her true

signature, including the two affidavits that she had previously filed of record, both with a second

signature on the translation for the notary, and her signature on her passport valid from March 20,

1990 to March 19, 1995 and on her passport valid from May 20, 1995 to May 20, 2000, as well

as her voter's registration card, all demonstrating that she did not sign her full name, Ingrid

Staufert Roldan, but rather, Ingrid Staufert R.   Petitioner's mother further stated that she was

advised by an attorney in Mexico who had examined the purported "wet" birth certificate, that

the document had been altered.  Petitioner also attached a second Informative Note from the

Mexican attorney dated November 7, 2022, stating that after review, he found the document to be

apocryphal, or "of doubtful authenticity, although widely circulated as true," based upon

Mexican law that no documents may contain any English words, and the word "LABEL" clearly

appeared on the document.  Further, he stated that the Unique Population Control Number on the

"wet" birth certificate was different from that on all Mexican documents, which contains

numbers and the first two letters of the mother and of the father.  The number appearing in the

space for the Unique Population Control Number contained only numbers, and less numbers than

are contained in the Unique Population Control Number as well.   Additionally, the document

contained the name "Ingrid Stauf Staufert" as a witness to the name of "Ingrid Staufert Roldan,"

which was highly unusual.   (Exhibit "C")  Petitioner's father also executed an Affidavit,

attesting to the fact that when he went to the Clerk's office to register the Petitioner's birth, his

wife was not with him.  Petitioner's aunt executed an Affidavit attesting to the fact that she

always picked up the Petitioner's mother at the airport when she arrived in the United States, as

she did not have a car, and that she did so on January 28, 1995 and that she returned her to the

airport to fly back to Mexico in early May, 1995.

52.     On November 10, 2022, the Department of Homeland Security filed a second "wet" birth

certificate, claiming that this was in response to Paragraph 7 of the Petitioner's mother's affidavit

filed on November 7, 2022 which complained of the translation, but there was no complaint

about the translation in Petitioner's mother's affidavit.  What she said was that the document was altered.  The Department of Homeland Security stated that it was filing a translated "wet" birth certificate, "without admitting any irregularities or errors."

53.     On November 13, 2022, Petitioner filed a Response to the Third Supplemental Filing in Support of the Motion to Reconsider Termination, containing another Informative Note from the Mexican attorney, who had taken both "wet" birth certificates to the Clerk in the Vital Statistics office where the "wet" birth certificate was purportedly issued.  In addition to finding the same issues as with the first, that the Unique Population Control Number still was in an incorrect format and did not have the required letters, just numbers, the Clerks advised that the fact of translating was an alteration, as any translation must be done on a separate page, and the fact of translating on the original document altered the document, rendering it apocryphal.  The Clerk further advised that neither "wet" birth certificate was in the form used by that office, that the sequential numbers were the same and the stamp was in the same place on both documents, rendering them invalid.  Petitioner repeated the affidavits that had been filed, all of which were uncontested, and requested a decision on the Motion to Reconsider Termination by the Immigration Judge, denying the motion. (Exhibit "D").

54.     On November 15, 2022, the Immigration Judge entered an Order denying the Motion to Reconsider Termination, and reaffirming the Order Terminating Proceedings that had been entered on October 14, 2022.  The Immigration Judge stated that the "entry/exit" records were available to the Department of Homeland Security at the time of hearing on October 14, 2022 and therefore, could not support a Motion to Reconsider.  The Immigration Judge specifically found as facts that the Petitioner was born in Ogden, Utah, on April 1, 1995, that he was a citizen

and native of the United States and also a citizen of Mexico.  Importantly, the Immigration Judge found both the Petitioner and his mother to be credible when they testified, a significant component of an Order of an Immigration Judge.

55.     The Department of Homeland Security immediately filed a Notice of Appeal, perhaps in the hope that Petitioner's counsel would not have immediately opened and printed the Order of the Immigration Judge, as once the Notice of Appeal was filed, Petitioner's counsel was locked out of the docket in the case on the electronic system, ECAS.  The Notice of Appeal was filed with the knowledge that the entire basis for the investigation, arrest, detention, charging and placement in removal proceedings of the Petitioner was an invalid document, a document described as "devoid of any probative value and shall be considered as forged," and that their subsequent filings were revealed to be altered and apocryphal.

56.     The Department of Homeland Security did not release the Petitioner on the day of the Order, and Petitioner's counsel wrote an email on November 17, 2022 advising that their continued detention of a United States Citizen violated Immigration and Customs Enforcement's own regulations, and that if Petitioner were not released by 5:00 p.m., she would include a count seeking monetary damages from all parties involved in the unlawful detention of a United States Citizen under the Federal Tort Claims Act.

57.     Shortly before 5:00 p.m., Petitioner's counsel received a telephone call from the Immigration and Customs Enforcement Supervisor advising that "HQ" had sent an email directing the release of the Petitioner.

58.     In that telephone call, the ICE Supervisor, Mitchell Diaz, advised that the Petitioner would be fitted with an ankle bracelet with a GPS monitor, "until a decision on the appeal,"

despite protestations from Petitioner's counsel that this infringed upon the liberty of a United

States Citizen.  Mitchell Diaz also inquired whether Petitioner's counsel would be the attorney of

record for criminal proceedings that would be initiated against Petitioner, relating to his United

States passport because of an error in the place of birth of his mother and father.  This, despite

the fact that the location of birth for the parents of an applicant for a United States passport is not

material, as it is the location of birth of the applicant for a United States passport born in the

United States which determines whether or not the passport will be issued.

59.     In addition, Mitchell Diaz inquired about the location of the Petitioner's sister, who was

alluded to in the Amended Notice to Appear attached to the Motion to Reconsider Termination

filed by the Department of Homeland Security, although she was not in removal proceedings and

is a United States Citizen.

60.     It is patently clear that the Department of Homeland Security, Immigration and Customs

Enforcement and the Office of the Principal Legal Advisor bear malicious animus towards the

Petitioner, and his family, and are retaliating against the Petitioner,  having been exposed as

devoting government resources for an investigation begun in 2014 and culminating eight years

later on September 18, 2022 with the arrest, detention, charging, and placement in removal

proceedings based upon a document which has been exposed as "devoid of any probative value

and shall be considered as forged" in the country in which it was issued and therefore, invalid in

the United States, and their further attempts to cover up that fact  have been exposed as

alterations of a document and apocryphal.

61.     In his Order of November 15, 2022, the Immigration Judge denied the Department

of Homeland Security's Motion to Reconsider Termination, confirming termination because they

had failed to meet their burden to establish alienage by clear and convincing evidence, and specifically finding that the Petitioner is a United States citizen.  Any actions in contravention of that Order by the Department of Homeland Security or Immigration and Customs Enforcement are in contravention of that valid Court Order.

62.     Petitioner has suffered and continues to suffer irreparable harm as a result of his unlawful arrest, detention, charging and placement in removal proceedings.  Petitioner sustained great emotional and mental distress in his arrest without advising him of the charges against him, in his prolonged detention, and now, in his release but continued control over his body and his liberty by the Department of Homeland Security, Immigration and Customs Enforcement in placing an ankle bracelet on his leg and a requirement to appear at Immigration and Customs Enforcement. Petitioner lost his employment, which has caused him great distress, as he not only needed that employment to provide income to meet his daily needs, but enjoyed working in the phlebotomy unit and the mental health unit at Unity Point Health, as much as the patients there needed him. His parents have suffered irreparable harm and great mental and emotional anguish as they feel responsible for the manner in which they handled the registration of his birth, although the Petitioner's mother was limited in her ability to take action by her responsibilities to her own mother, to her newborn child, and was without a vehicle to travel to the office of vital statistics to register the Petitioner's birth.  Both Petitioner's mother and father have voiced concern that the manner in which their son was targeted, investigated, arrested, detained, charged, placed in removal proceedings, and now fitted with an ankle bracelet, with required reporting to an Immigration and Customs Office, all based on an invalid document, as they thought actions of this type occurred in third world countries, not the United States.

63.     Petitioner has exhausted all administrative remedies and there are no further administrative acts Petitioner can take to obtain the relief sought.  However, exhaustion is not required where (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995).  All four circumstances are present in this case. Further, exhaustion may be excused if "the interest of the individual in retaining prompt access to a federal judicial forum [outweighs] countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

64.     Petitioner has had to retain undersigned counsel to represent him in this matter and is obligated to pay her a reasonable fee therefore.  Plaintiff has expended significant attorney's fees during the last two months related to his unlawful arrest, detention, and placement in removal proceedings, and is entitled to his attorney's fees under applicable law, including the Equal Access to Justice Act, 5 U.S.C. §504 and 28 U.S.C. §2412.

## CAUSES OF ACTION

## COUNT ONE
## SUBSTANTIVE DUE PROCESS

65.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 64 above.

66.     All persons residing in the United States are protected by the Due Process Clause of the Fifth Amendment.  *See, Zadvydas*, 533 U.S. at 693-94;  *Plyler v. Doe*, 457 U.S. 202, 210 (1987)); *Matthews v. Diaz*, 536 U.S. 67 (1976); *Yamataya,* 189 U.S. 100-01; see also *Rusu v. INS*, 296 F. 3d 316, 321-22 (4ᵗʰ Cir. 2002); *Wilson v. Zeithern,* 265 F. Supp. 2d 628, 634 (E.D.

Va. 2003).

67.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be ...
deprived of life, liberty or property without due process of law." U.S. Const. Amend. V.
"Freedom from bodily restraint has always been at the core of the liberty protected by the Due
Process clause from arbitrary government action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992);
*Youngberg v. Romeo*, 457 U.S. 307 (1982).   In *Foucha*, the High Court noted: "the Due Process
Clause contains a substantive component that bars certain arbitrary, wrongful government actions
'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.
S. 113, 125 (1990). *See also United States v. Salerno*, 481 U. S. 739, 746 (1987);  *Daniels v.
Williams*, 474 U. S. 327, 331 (1986).   Freedom from bodily restraint has always been at the core
of the liberty protected by the Due Process Clause from arbitrary governmental action.
*Youngberg v. Romeo*, 457 U. S. 307, 316 (1982). "It is clear that commitment for any purpose
constitutes a significant deprivation of liberty that requires due process protection." Jones, supra,
at 361 (internal quotation marks omitted). We have always been careful not to "minimize the
importance and fundamental nature" of the individual's right to liberty.  *Salerno, supra*, at 750.
The vital liberty interest is at stake when an individual is subject to detention by ICE.  *See
Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a
serious constitutional problem."); *Kiareldeen v. Reno*, 71 F. Supp.2d 402, 409-10 (D.N.J. 1999)
(Holding that, in analyzing due process in the immigration context, the first factor in the
procedural due process analysis, "the petitioner's private interest in his physical liberty, must be
accorded the utmost weight.").  Freedom from imprisonment—from government custody,
detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due

Process clause protects. *Zadvydas*, 533 U.S. at 690. Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for incarceration "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690.

68.     Petitioner's detention from September 18, 2022 through November 17, 2022, and his release with an GPS ankle bracelet strapped to his leg, facilitating continued monitoring by the Department of Homeland Security, Immigration and Customs Enforcement and a requirement that he report to Immigration and Customs Enforcement beginning on November 30, 2022, violates substantive due process by depriving him of his fundamental liberty interest in remaining free from detention.   Petitioner is still being detained by the Department of Homeland Security, Immigration and Customs Enforcement, he is just not physically detained in Broward Transitional Center.  Government detention violates an individual's fundamental liberty interest unless the detention is "narrowly tailored to serve a compelling government interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).  Non-punitive detention must present a "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. This is particularly so where the detention has been proven to be unlawful, as the Petitioner is not an alien within the meaning of 8 U.S.C. §1101(a)(3), but a United States Citizen, one whose proceedings have been terminated by Order of the Immigration Judge first on October 18, 2022, and then again on November 15, 2022 because the Department of Homeland Security could not establish that he was an alien, and properly in removal proceedings and where the Immigration Judge has specifically found that he is a citizen and native of the United States.

69.     Petitioner's detention from September 18, 2022 through November 17, 2022 and the continued infringement upon his liberty by monitoring his movements through a GPS ankle bracelet by Immigration and Customs Enforcement and a requirement that he appear at Immigration and Customs Enforcement on November 30, 2022, is based in a refusal to accept the lawful Order of the Immigration Judge on October 18, 2022 and again on November 15, 2022.  It is based upon the refusal of Department of Homeland Security, Immigration and Customs Enforcement, and the Office of the Principal Legal Advisor to accept that they have been exposed to have relied upon an invalid document, one that is "devoid of probative value and should be considered as forged."  It serves no compelling government interest.

70.     No special justification exists for the continued infringement upon the Petitioner's liberty by placing a GPS monitored ankle bracelet on his body and a requirement that he appear at Immigration and Customs Enforcement on November 30, 2022.  The Immigration Judge found on October 18, 2022 and again on November 15, 2022 that the Department of Homeland Security had failed to meet its burden of proof by clear and convincing evidence that the Petitioner is an alien and that removal proceedings against him were proper.  The Immigration Judge found specifically that the Petitioner is a citizen and native of the United States and a citizen of Mexico. The Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor were exposed as basing their entire eight year investigation of the Petitioner, his arrest, detention, charges and placement in removal proceedings on a document which is "devoid of any probative value and shall be considered as forged."  The Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor have been exposed as altering government documents in Mexico to support their

continued targeting and relentless pursuit of the Petitioner.   Petitioner should have been released from detention, with apologies, without any attempt to further constrain his liberty, and be allowed to return to his home free from unlawful intrusion.

71.     Petitioner is not a flight risk or a danger to the community.  He is a United States Citizen unfairly targeted, unlawfully arrested and detained, and now, his personal liberty is infringed upon, without legal justification therefor.  The further restraint upon his liberty is a violation of his substantive due process rights.  There is no justification for placement of a GPS monitored ankle bracelet on a United States Citizen or a requirement that he appear before Immigration and Customs Enforcement on November 30, 2022, where an Immigration Judge has terminated proceedings, based upon the failure of the Department of Homeland Security to meet its burden of proof to establish that he is an alien, and properly in removal proceedings.  The pendency of an appeal of that well reasoned decision should not be perceived as providing additional power to infringe upon the personal liberty of a United States Citizen by the Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor, especially under the circumstances of this case.

## COUNT TWO
## NEED FOR EQUITABLE RELIEF

72.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 64 above.

73.     There is a real and actual controversy among the parties.  Petitioner has suffered and will continue to suffer irreparable injury as a result of the acts of the Respondents complained about herein.  Petitioner was finally released from unlawful detention on November 17, 2022 following the November 15, 2022 Order of the Immigration Judge denying the Motion to Reconsider

Termination of his Order of October 18, 2022.  However, the Department of Homeland Security

the Immigration and Customs Enforcement have continued to detain the Petitioner, a United

States citizen, by unlawful restriction of his liberty by fitting him with a GPS monitored ankle

bracelet, requiring him to appear at Immigration and Customs Enforcement on November 30,

2022, and confiscating his United States passport.  Petitioner faces a realistic threat of being

subjected to the Respondent's policies and or practices in controvention of a lawful court order,

of refusing to abide by immigration court orders and to continue to pursue him unlawfully,

despite having the very basis for their investigation, arrest, detention, charging, and placement in

removal proceedings exposed as "devoid of any probative value and shall be considered as

forged."  The Department of Homeland Security has contacted the Division of Motor Vehicles in

Texas in an attempt to have his driver's license revoked as the product of fraud, has revoked his

United States passport, and has contacted the State of Utah to interfere with his valid United

States birth certificate, claiming that it is the product of fraud.  There is a realistic threat that the

Department of Homeland Security, Immigration and Customs Enforcement will next target his

sister, who was not a party to the removal proceedings but whom they have indicated is in their

sights.  All of these injuries will continue unless the actions of the Department of Homeland

Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor

are declared to be unlawful and enjoined.

**COUNT THREE**
**DEPRIVATION OF RIGHTS**
**UNDER 18 U.S.C. §242**

74.	Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the

allegations in Paragraphs 1 through 64 above.

75.     This is a count under 18 U.S.C. §242, which provides:  [w]hoever, under color of any

law, statute, ordinance, regulation, or custom, willfully subjects any person in any State,

Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or

immunities secured or protected by the Constitution or laws of the United States, or to different

punishments, pains, or penalties, on account of such person being an alien, or by reason of his

color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or

imprisoned not more than one year, or both."

76.     The actions of the Respondents as set forth herein were all under color of law,  and have

deprived the Petitioner of his rights under the Fourth and Fifth  Amendments to the United States

Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.

77.     The Fourth Amendment to the United States Constitution guarantees "the right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated..."

78.     The Fifth Amendment to the United States Constitution provides: "No person shall be ...

deprived of life, liberty or property without due process of law..."

79.     The Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution provides: "No State shall make or enforce any law which shall abridge the

privileges or immunities of citizens of the United States; nor shall any State deprive any person

of life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws."

80.     The Respondents violated the Petitioner's Fourth Amendment rights when they entered

his cabin on board the Royal Caribbean Cruise Lines ship that was docked, but had not

disembarked, before dawn on September 18, 2022, seized him, took him off the ship, handcuffed

him, took him to Krome Detention Center, then to Broward Transitional Center where he was

detained from September 18, 2022 to November 17, 2022.  The Respondents did not advise the

Petitioner why they were taking him off the ship before it disembarked, nor of the charges against

him at the time of seizure, or at the time of taking his Swon Statement in Proceedings under

Section 235(b)(1) of the Act, before a Notice to Appear in removal proceedings was issued, and

not for five days after he was taken to Broward Transitional Center.  The Respondents have

further violated his Fourth Amendment rights by seizing his United States passport when he was

ultimately released from detention in Broward Transitional Center, without right thereto.

81.     The Respondents have deprived and continue to deprive the Petitioner of liberty and

property to which he is entitled under the Fifth Amendment to the United States Constitution as a

United States Citizen.  They arrested, detained, charged and placed him in removal proceedings

as an alien based upon a document which they failed to translate because a translation would

reveal that it was "devoid of any probative value and shall be considered as forged."  They then

continued his unlawful detention after the Immigration Judge's Order Terminating Proceedings

of October 18, 2022, in which the Immigration Judge found that the Department of Homeland

Security had failed to meet its burden to prove alienage.  They further continued his detention

even after entry of the Immigration Judge's Order entered November 15, 2022 denying their

Motion to Reconsider Termination.  They then continued his detention after being directed by

"Headquarters" to release him from Broward Transitional Center, physically infringing upon his

liberty by fitting him with a GPS monitored ankle bracelet and requiring him to appear at

Immigration and Customs Enforcement on November 30, 2022, and confiscating his passport which continues to the present day.

82.     The Respondents have denied the Petitioner equal protection of the law to which he is entitled under the United States Constitution as a United States Citizen.  They arrested, detained, charged and placed him in removal proceedings as an alien based upon a document which they failed to translate because a translation would have revealed that it was "devoid of any probative value and shall be considered as forged."  When they were exposed as relying upon an invalid document to target him, to investigate him beginning in 2014, to arrest, detain, charge and place him in removal proceedings, they doubled down and altered a "wet" birth certificate issued in Mexico to support their unlawful acts, even after an attorney in Mexico and the clerks at the office of vital statistics where the "wet" birth certificate was purportedly issued, stated that it was apocryphal.  They then altered that document under the guise of "translating" it which led to the conclusion by the Mexican attorney that "a translation cannot, in any way, validate an apocryphal document as it would only translate a false document."   They continued to unlawfully detain him after entry of the Immigration Judge's Order Terminating Proceedings of October 18, 2022, in which the Immigration Judge found that the Department of Homeland Security had failed to meet its burden to prove alienage.  They further continued his detention even after entry of the Immigration Judge's Order entered November 15, 2022 denying their Motion to Reconsider Termination.  They then further continued his detention after being directed by "Headquarters" to release him from Broward Transitional Center, physically infringing upon his liberty by fitting him with a GPS monitored ankle bracelet and requiring him to appear at Immigration and Customs Enforcement on November 30, 2022, and confiscating his passport.

83.     The Respondents have continued their unlawful actions, in controvention of valid Court Orders, and in violation of  18 U.S.C. §242 in depriving the Petitioner of rights as set forth hereinabove.

**COUNT THREE**
**CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT**

84.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 64 above.

85.     This count states a claim under the Federal Tort Claims Act, 28 U.S.C. §2671-2680.

86.     The Petitioner was injured significantly by the actions of the Respondents, who are federal government officials or employees, taken in reliance upon a document which they knew or should have known was invalid, as a translation of that document would have revealed that the certification of the electronic document did not include the name, address and most importantly, the signature of the official certifying the document.  When the document was exposed as being "devoid of any probative value and shall be considered as forged," they did not relent.  Instead, they obtained another document and altered that to support their initial determination that the earlier dating of a birth certificate for the Petitioner, obtained by his father in Mexico without his mother's knowledge, before she had an opportunity to register his birth in the U.S., was evidence that the birth certificate issued in the United States was a fraud.

87.     In reliance upon this document, and based upon this document, which they knew or should have known was invalid, the Respondents dispatched special investigators from the Department of State and undertook an eight year investigation of the Petitioner, communicated with state agencies in Texas to revoke of his Texas driver's license, the state agency in Utah, to revoke United States birth certificate, and actually revoked his United States passport.  The

Respondents seized the Petitioner from his cabin aboard a Royal Caribbean Cruise Lines ship

when it was docked, but had not begun disembarkation, before dawn on Sunday, September 18,

2022.  Once they left the ship, they handcuffed the Petitioner without advising him why he was

being taken and what he was being charged with.  The Respondents took a Record of Sworn

Statement in Proceedings under Section 235(b)(1) of the Act, without advising  the Petitioner of

the charges against him, or why he was being held and interrogated, and before he was

improvidently placed in removal proceedings.  The Respondents took the Petitioner to Krome

Detention Center and ultimately, to Broward Transitional Center where they detained him from

September 18, 2022 to November 17, 2022.  The Respondents did not advise the Petitioner why

he was being held or of the charges against him for five days after he was taken to Broward

Transitional Center.  The Respondents disregarded his continuing requests, and pleas, orally and

in writing, to speak to his detention officer. The Respondents did not release the Petitioner after

the Immigration Judge terminated proceedings orally after hearing on October 14, 2022, and then

in an Order dated October 18, 2022, finding that the Department of Homeland Security had failed

to prove that he was an alien  The Respondents continued to detain Petitioner even after the

Immigration Judge denied the Motion to Reconsider Termination filed by the Department of

Homeland Security on November 15, 2022, finding specifically that he was a citizen and native

of the United States.   The Respondents laughingly told Petitioner that they would "consider"

letting him out while the appeal of the Immigration Judge's decision was pending before the

Board of Immigration Appeals.  When the Respondents finally did release him, it was only after

advice from Petitioner's counsel that his arrest, detention and charging were all in violation of

Immigration and Customs Enforcement's own policies and procedures and that monetary

damages would be sought under the Federal Tort Claims Act if he were not released.  The Respondents also continued to detain Petitioner, depriving him of his liberty, by physically controlling him by placement of a GPS monitored ankle bracelet, and requiring him to appear at Immigration and Customs Enforcement on November 30, 2022, even when they finally did release him.  The Respondents have threatened the Petitioner with criminal prosecution.  The Respondents have made veiled threats that they will pursue his sister, whose own birth certificate was registered in the United States later than it was registered in Mexico, based upon the circumstances similar to those of the Petitioner.

88.     At all times, and in all of these actions, the Respondents were acting within the scope of their official duties.

89.     The actions of the Respondents were negligent and wrongful.  They were egregious.  The Respondents have acted with malicious indifference and animus towards the Petitioner, and have taken retaliatory actions against him and against his interests, his property, his rights, and his family members.

90.     The negligent and wrongful actions of the Respondents have injured the Petitioner physically, deprived him of his liberty, and caused him significant emotional distress, and they are the proximate cause of his injuries.

**COUNT FOUR**
**DECLARATORY RELIEF  UNDER 28 U.S.C. §2201**

91.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 64 above.

92.     This is a count for declaratory relief under 28 U.S.C. §2201 - Creation of Remedy.

93.     There is an actual controversy within this Court's jurisdiction, as the Respondents

wrongfully investigated, arrested, detained, charged and placed the Petitioner in removal proceedings, beginning in 2014 to the present day as they continue to physically constrain him by placement of a GPS monitored ankle bracelet on him, and requiring him to appear at Immigration and Customs Enforcement on November 30, 2022, all stemming from a document which has been found to be "devoid of any probative value and shall be considered as forged" in the country in which it was issued.

94.     The Petitioner is a Untied States citizen.  The Immigration Judge terminated proceedings against him on October 18, 2022 because the Department of Homeland Security had failed to prove alienage by clear and convincing evidence.  The Immigration Judge specifically found that the Petitioner is a United States citizen on November 15, 2022 in an Order denying the Motion to Reconsider Termination filed by the Department of Homeland Security.

95.     It is appropriate for this Court to declare the rights and other legal relations of the Petitioner and the Respondents.

## PRAYER FOR RELIEF

Plaintiff requests this Honorable Court to grant the following relief:

A.     Assume jurisdiction over this matter.

B.     Declare the Petitioner a United States Citizen and native and a citizen of Mexico, consistent with the Order of the Immigration Judge entered on November 15, 2022;

C.     Issue a Writ of Habeas Corpus directing Respondents to remove the GPS monitored ankle bracelet from the Petitioner's leg and to cease and desist from all actions to physically detain or restrain the Petitioner, including mandatory appearances at Immigration and Customs Enforcement beginning on November 30, 2022.

D.     Declare that the actions taken against the Petitioner described herein violate the Due Process Clause of the Fifth Amendment to the United States Constitution, the right to be free from unreasonable seizures of the Fourth Amendment to the Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

E.     Enjoin Respondents from any further retaliatory actions against the Petitioner, or his family;

F.     Order the Respondents to reinstate the Petitioner's United States passport, communicating with the U.S. passport agency to confirm that there was no fraud in procuring the passport;

G.     Order the Respondents to reinstate the Petitioner's Texas Driver's License, or if the same is not yet revoked, to communicate with the Department of Motor Vehicles that there was no fraud in procuring the driver's license;

H.     Order the Respondents to communicate with the State of Utah that there was no fraud in the Petitioner's United States birth certificate and if the birth certificate has been revoked because of the actions of the Respondents, to reinstate the birth certificate;

I.     Enter monetary damages against the Respondents for the Petitioner's physical and emotional injuries;

J.     Award Petitioner his costs and reasonable attorney's fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes; and

E.     Grant such other relief as the Court may deem just and properl.

DATED this 22nd day of November, 2022.

**ROBERTA M. DEUTSCH, LLC**
Attorney for Petitioner
1800 Corporate Blvd., N.W., Suite 310
Boca Raton, Florida 33431
Telephone:     (561) 368-1008
Facsimile: (561) 368-1009
Email: robertadeutsch@aol.com


By:___/s/ Roberta M. Deutsch____
      **ROBERTA M. DEUTSCH**
      FBN: 743828