## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  0:22-cv-62201 WPD

CARLOS TONATIUH  HERNANDEZ, JR., a/k/a    )
CARLOS TONATIUH  HERENANDEZ  STAUFERT    )
    )
       Plaintiff,    )
v.    )
    )
MICHAEL W. MEADE, District Director    )
Miami Field Office    )
U.S. Immigration and Customs Enforcement    )
U.S. Department of Homeland Security    )
in his Official Capacity and his successors and assigns,    )
    )
CYNTHIA LAWSON, Warden    )
Broward Transitional Center, Individually and    )
in her official capacity and her successors and assigns,    )
    )
ALEJANDRO MAYORKAS,  Secretary    )
U.S. Department of Homeland Security,    )
in his official capacity and his successors and assigns,    )
    )
TAE D. JOHNSON, Acting Director    )
U.S. Immigration and Customs Enforcement    )
in his official capacity and his successors and assigns,    )
    )
ANTHONY BLINKEN, Secretary    )
U.S. Department of State    )
in his official capacity, and his successors and assigns    )
    )
MERRICK GARLAND, Attorney General    )
U.S. Department of Justice, in his official capacity    )
and his successors and assigns,    )
    )
NELSON PEREZ, Chief Counsel,    )
Office of the Principal Legal Advisor, Individually and    )
in his official capacity and his successors and assigns,    )
    )
ERIC AURELIAS, Acting Chief Counsel,    )
Office of the Principal Legal Advisor, Individually and    )
in his official capacity and his successors and assigns,    )

CARLOS LOPEZ, Deputy Chief Counsel,                          )
Office of the Principal Legal Advisor, Individually and      )
in his official capacity and his successors and assigns,     )
                                                             )
ARTHUR MCLAUGHLIN, U.S. Immigration and                      )
Customs Enforcement, Department of Homeland                  )
Security, Individually and in his official capacity and      )
his successors and assigns                                   )
                                                             )
MITCHELL DIAZ,  U.S. Immigration and Customs                 )
Enforcement, Department of Homeland Security,                )
Individually and in his official capacity and his           )
successors and assigns,                                      )
                                                             )
TOMMY TOWNER,. a/k/a TEDDY TOWNER,                           )
Special Agent, U.S.  Department of State Diplomatic Security )
Service, Individually and in his official capacity           )
and his successors and assigns;  and                         )
                                                             )
EVEGELIA SOLOMOS,  Individually and                          )
in her official capacity and her successors and assigns.     )
                                                             )
        Respondents.                                         )
_____)

### SECOND AMENDED PETITION FOR WR IT OF HABEAS CORPUS, FOR RELIEF UNDER 28 U.S.C §2201 AND FOR DAMAGES FOR DEPRIVATION OF RIGHTS UNDER COLOR OF FEDERAL AUTHORITY AND CIVIL CONSPIRACY UNDER 42 U.S.C. §1985(3)

### INTRODUCTION

Petitioner,  **CARLOS TONATIUH HERNANDEZ. JR.,** a/k/a **CARLOS TONATIUH HERNANDEZ STAUFERT**, (as named by the Department of Homeland Security), by and through undersigned counsel, respectfully petitions this Court for a Writ of Habeas Corpus to review the lawfulness of his detention by Respondents from September 18, 2022 through November 17, 2022, and of the continued exercise of control over him and infringement upon his liberty by serving him with Orders of Release on Recognizance, a

supervised release program designed for aliens.  The Respondents continue to exercise control over the Petitioner, and his identity, without legal authority to do so.   Petitioner's detention is unlawful because it is a violation of the Respondent's due process rights under the United States Constitution.  See, e.g., *Yamataya v. Fisher*, 189 U.S. 86, 100-101 (1903) ("[T]his Court has never held, nor must we now be understood as holding, that administrative officers, when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in "due process of law.").   Petitioner's continued detention is also unlawful as it arose from a warrantless arrest, violating his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizsures, as more fully set forth herein, at the hands of U.S. Immigration and Customs Enforcement and the U.S. Department of Homeland Security.

2.   Petitioner, a United States Citizen, was unlawfully arrested by U.S. Immigration and Customs Enforcement ("ICE"),  and held in detention without bond from September 18, 2022 to November 17, 2022, a total of 59 days.  Five days after his arrest, Petitioner was first served with a Notice to Appear in Removal Proceedings which stated the grounds for his arrest, detention and placement in removal proceedings.  However, there was no basis for Petitioner's arrest, detention and placement in removal proceedings, and he was entitled to immediate release from detention upon the entry of an Order of the Immigration Judge orally on October 14, 2022 and then in writing on a form Order on October 18, 2022 that the Government, through the Office of the Principal Legal Advisor, had not met their threshhold burden of proof to establish that he was an alien, and that removal proceedings were proper in the first instance.

3.   The Department of Homeland Security, Immigration and Customs Enforcement, and

the Office of the Principal Legal Adviser, all still refuse to acknowledge that the basis for

Petitioner's unlawful arrest and detention was an invalid document, specifically, a document that

was in Spanish, and was never translated into English at any time from the moment it came into

the Government's focus on  October 23, 2014, and which was later revealed to be "devoid of

probative value and should be considered as forged" under the laws of the country in which it

was issued, and therefore, invalid in the United States and in removal proceedings in

Immigration Court[1].   Nor have they acknowledged that the violations of the Petitioner's Fifth

Amendment rights arose from that original untranslated, invalid document, and a threadbare,

woefully inadequate "investigation" that actually produced evidence contrary to and outweighing

the assertions of the Respondents, that Petitioner was not born in the United States on April 1,

1995, which was ignored by the U.S. Department of State Diplomatic Security Service employee

(then in his 20s)  who was handling the case.

    3.    The Immigration Judge entered his written form Order on October 18, 2022, after

refusing to admit the untranslated Mexican birth certificate into evidence.  As this was the only

evidence the Department of Homeland Security possessed to prove alienage, they then failed to

meet its threshhold burden of proof by clear and convincing evidence to establish that the

Petitioner was an alien, subject to removal proceedings, and removable.  (**Exhibit "A"**).

Termination of the proceedings was then not just appropriate, it was required.  On November 15,

2022, the Immigration Judge further denied a Motion to Reconsider Termination filed by the

---

[1]  The document was invalid because it was electronically filed and the required certification for electronically filed documents in Mexico includes the name, address and signature of the officer certifying the document.  The untranslated Mexican birth certificate contained the words "Fallo La Firma," or "The Signature Failed" and there was no name or address for the certification.

Department of Homeland Security on October 18, 2022 in a lengthy decision (**"Exhibit B"**).  In the Order Denying the Motion for Reconsideration, the Immigration Judge specifically found that the Petitioner is a United States Citizen and native who was born in Ogden, Utah, on April 1, 1995, and a Mexican citizen as well.

4.     The Department of Homeland Security, Immigration and Customs Enforcement refused to release the Petitioner after the entry of the Immigration Judge's oral order terminating proceedings on October 14, 2022.  The Department of Homeland Security, Immigration and Customs Enforcement refused to release the Petitioner after the entry of the Immigration Judge's written Order terminating proceedings on October 18, 2022.  Instead, the Department of Homeland Security, Office of the Principal Legal Advisor filed a Motion to Reconsider Termination immediately after the written Order was entered.  Immediately prior to the issuance of the Order Denying the Motion to Reconsider Termination proceedings, with knowledge that it was being filed in the docket by the Clerk, the Office of the Principal Legal Adviser filed a Notice of Appeal with the Board of Immigration Appeals of the entry of the Order of Termination.  They did this despite the fact that it they no evidence to support the Notice to Appear at the time of the October 14, 2022 extended Master Calendar on the contested Notice to Appear and termination was required.  The Department of Homeland Security, Immigration and Customs Enforcement interposed its Notice of Appeal to preclude the Petitioner's release when it had no legal ground to do so.  This was because the charging document, the arrest warrant, was nullified at the time of entry of the Immigration Judge's oral order of termination on October 14, 2022, and again at the time of entry of his written Order of Termination on October 18, 2022. Nevertheless, the Department of Homeland Security, Immigration and Customs Enforcement

refused to release him at that time, and did not intend to release Petitioner even after the November 15, 2022 Order Denying the Motion to Reconsider Termination until the Board of Immigration Appeals had ruled on their appeal from the Immigration Judge's decision.  When Immigration and Customs Enforcement ultimately agreed to release the Petitioner, under orders from "HQ," and threats from Petitioner's counsel that damages would be sought against them under the Federal Tort Claims Act for violations of Immigration and Customs Enforcement internal regulations, they reluctantly released him.  However, they continued to restrict Petitioner's liberty by the placement of an ankle bracelet on his body, and served him with an Order of Release on Recognizance ("OREC"), a document typically served on aliens in custody proceedings with requirements to appear before a duty attorney at Immigration and Customs Enforcement, to continue his unlawful detention, and confiscated his United States passport to infringe upon his right to travel.  **MITCHELL DIAZ**, the ICE Supervisor, advised counsel for the Petitioner that the Diplomatic Security Service were involved in the decision making regarding the circumstances of Petitioner's release.

5.     The detention of the Petitioner, a United States Citizen, and the further control upon him and infringements of his rights by the placement of the ankle bracelet and control through OREC, which is used for aliens in custody proceedings, has caused and will continue to cause extreme and irreparable hardship to him and his family, and it violates the Immigration and Nationality Act, controlling Federal Court precedent, regulations of the Department of Homeland Security, Immigration and Customs Enforcement and Petitioner's due process rights under the Fifth Amendment to the United States Constitution.  He has suffered damages beyond the loss of his liberty for 59 days.  These include the loss of his cherished employment, plans to begin a

Master's Program in psychology at Briar Cliff University in January, 2023, physical and emotional distress from prolonged incarceration and upon release, from having to wear a disfiguring ankle bracelet which embarrassed him and prevented him from engaging in social interactions and humiliation at not being able to support himself or pay his bills as he did with ease prior to September 18, 2022 when he was gainfully and happily employed, with a bright future before him beginning with the pursuit of his educational goals.

6.     The actions of the Respondents alleged herein evince coordination and agreement among Federal agencies to deprive the Petitioner of rights inuring to him as a United States Citizen, and constitute a civil conspiracy, whose employees were acting with authority granted by their respective agencies, under Federal authority, but whose actions were either *ultra viros*, or were undertaken with malice and aforethought, and which are actionable.

## JURISDICTION

6.     This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 *et seq.*  This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §2241 *et seq*, and Federal Question Jurisdiction under 28 U.S.C. §1331, as Petitioner was in custody and still is physically detained under the color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States.  *See, Zadvydas v. Davis*, 533 U.S. 678 (2001).  This Court has the power to grant writs of habeas corpus pursuant to 28 U.S.C. §2241.  This Court may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, et seq., the All Writs Act, 28 U.S.C. §1651, and may award damages under 28 U.S.C. §1331 and 42 U.S.C. §1985(3).

## VENUE

8.     Venue is properly with this Court pursuant to 18 U.S.C. §1391( c) because Respondents are employees or officers of the United States or under contract with the United States, acting in their official capacity, and an agency of the United States, and Petitioner is under their control; because Petitioner was detained by and is still under the control of ICE at Broward Transitional Center in Pompano Beach, Florida, which is under the jurisdiction of this District; because a substantial part of the events or omissions giving rise to the claim occurred in this District; and because the government's decision to hold Petitioner in custody and to monitor him through a GPS ankle bracelet and control through OREC, used for aliens in custody proceedings, and his administrative proceedings occurred in this District.

## PARTIES

9.     Petitioner, **CARLOS TONATIUH HERNANDEZ, JR**., is a 27 year old male citizen and native of the United States, having been born in Ogden, Utah, on April 1, 1995.  He was awakened and arrested in his cabin on board a Royal Caribbean Cruise Line ship that had docked, but had not disembarked, in the early morning hours on Sunday, September 18, 2022. He was handcuffed and taken first to Krome Detention Center and then to and detained in ICE custody at the Broward Transitional Center, in Pompano Beach, Florida from September 18, 2022 through November 17, 2022.  Upon his release, he is still under the control of Immigration and Customs Enforcement which was initiated through a monitored GPS ankle bracelet and service of Order of Release on Recongizance, a form of supervised release used for aliens in custody proceedings, with required reporting at Immigration and Customs Enforcement on November 30, 2022.  The ankle bracelet was later removed and the OREC paperwork was amended, but the Petitioner remains subject to a program designed specifically for aliens.

10.     Respondent, **MITCHELL W. MEADE**, is the District Director of the Miami Field Office of the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  ICE is the component of DHS responsible for detaining and removing aliens according to U.S. immigration law.  In his official capacity, he is the legal custodian of the Petitioner.

11.     Respondent, **CYNTHIA LAWSON**, is the Warden of Broward Transitional Center, where Petitioner was detained at the behest of ICE.  In her official capacity, she is the legal custodian of the Petitioner.

12.     Respondent**, ALEJANDRO MAYORKAS**, is the Secretary of the Department of Homeland Security.  He is responsible for the administration of ICE and the enforcement of the INA.  In his official capacity, he is the legal custodian of the Petitioner.

13.     Respondent**, TAE D. JOHNSON**, is the Acting Director of U.S. Immigration and Customs Enforcement.  In his official capacity as the head of ICE, he is the legal custodian of the Petitioner.

14.     Respondent**, ANTHONY BLINKEN** is the Secretary of the U.S. Department of State   He is responsible for the administration of the Department of State and any investigations undertaken by the Department of State of the Diplomatic Security Service and its Special Agents. In his official capacity, under the facts of this case, he is responsible for the actions of the Department's Special Agent and the conduct of the investigation of the Petitioner which led to the detention of the Petitioner.

15.     Respondent, **MERRICK GARLAND** is the Attorney General of the United States.  He is responsible for administration of the Executive Office for Immigration Review,

which includes the U.S. Immigration Courts and the Board of Immigration Appeals.

16.     Respondent, **NELSON PEREZ**, is the Chief Counsel for the Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of Homeland Security.  He is responsible for the administration of OPLA at the Broward Transitional Center, where the Petitioner is detained.   In his official capacity, he is the legal custodian of the Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of and control over the Petitioner, a United States Citizen.

17.     Respondent, **ERIC AURELIAS**, is the Acting Chief Counsel for the Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of Homeland Security.  He is responsible for the administration of OPLA at the Broward Transitional Center, where the Petitioner is detained.   In his official capacity, he is the legal custodian of the Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of and control over the Petitioner, a United States Citizen.

18.     Respondent, **CARLOS LOPEZ**, is the Deputy Chief Counsel for the Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of Homeland Security.  He is responsible for the administration of OPLA at the Broward Transitional Center, where the Petitioner is detained.   In his official capacity, he is the legal custodian of the Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of and control over the Petitioner, a United States Citizen.

19.     Respondent, **ARTHUR MCLAUGHLIN**, is the ICE Detention Officer assigned to the Petitioner at Broward Transitional Center.  In his official capacity, he is the legal custodian of the Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring  of and control over the Petitioner, a United States Citizen.

20.     Respondent, **MITCHELL DIAZ**, is the ICE Supervisor assigned to the Petitioner

Petitioner at Broward Transitional Center.  In his official capacity, he is the legal custodian of the

Petitioner.  Individually, he is responsible for the unlawful detention and continued monitoring of

and control over the Petitioner, a United States Citizen.

21.     Respondent, **TOMMY TOWNER**, is a Special Agent for the U.S. Department of

State, Diplomatic Security Service.  In his official capacity, he conducted an investigation into

the Petitioner based upon an invalid document and an incomplete investigation.  Individually, he

is responsible for conducting an investigation of the Petitioner relying upon an invalid document,

disregarding contrary evidence,  leading to the arrest and the unlawful detention of the Petitioner,

a United States Citizen.  Respondent, **TOMMY TOWNER**, also uses the name **TEDDY**

**TOWNER**.

22.     Respondent, **EVEGELIA SOLOMOS**, is the Assistant Chief Counsel for the

Office of the Principal Legal Advisor (OPLA) for the Miami Field Location of the Department of

Homeland Security.  In her official capacity, she is the government's attorney responsible for the

removal proceedings conducted by OPLA at the Broward Transitional Center, where the

Petitioner was detained.   In her official capacity, she is the legal custodian of the Petitioner.

Individually, she is responsible for the unlawful detention and continued monitoring and control

of the Petitioner, a United States Citizen.

## STATEMENT OF FACTS

### THE PETITIONER

23.     Petitioner, **CARLOS TONATIUH HERNANDEZ, JR**., is a 27 year old United

States Citizen.  He was born in the home of his grandmother, Conchita Staufert, in Ogden, Utah

on April 1, 1995.  His mother, Ingrid Staufert Roldan, had entered the United States on January

28, 1995, intending to do some baby shopping with her mother and her sister, Adriana Bury, who at that time, resided in Ogden, Utah, a few blocks away from her mother, Petitioner's grandmother, Conchita Staufert.

24.     Conchita Staufert had been struggling with recurrent breast cancer which was first diagnosed in the early 1990s.  Her daughter, Ingrid, the Petitioner's mother, was one of three daughters[2], and she was Conchita Staufert's caregiver for a decade as she struggled with cancer, which ultimately took her life on September 1, 1999.  Ingrid was also the caregiver for her father, who was dying of AIDS in Mexico and ultimately passed away in 1995, a few months after the Respondent's birth.

25.     Ingrid's plan to leave the United States to return to Mexico was interrupted when Conchita had a health crisis, and she remained in the United States and gave birth at Conchita's home.  Conchita, a friend, and a midwife all assisted in the Petitioner's delivery.  Ingrid's Mexican passport expired prior to the Petitioner's birth, on March 19, 1995, but by that time, she was also unable to fly as it was too late into her pregnancy.

26.     On April 1, 1995, Ingrid called Petitioner's father, Carlos Hernandez Sanchez, in Mexico, to tell him of the birth of his son.  Carlos was excited, but frustrated that he could not be in attendance at his son's birth.  Unbeknownst to Ingrid, Carlos registered the Petitioner's birth in Mexico a few days after he was born.[3]  He did not tell Ingrid that he had done this for a month or

---

[2]   Ingrid's sister, Adriana Bury, lived a few blocks from her mother in Ogden, Utah at the time of the Respondent's birth, but later moved to New Jersey in connection with her employment for a United States contractor.  Ingrid's sister, Carla Staufert-Sevier lived in Mexico at the time of the Respondent's birth.  At the time of Conchita Staufert's death in 1999, there were no family members living in Ogden, Utah.  Carla Staufer-Sevier later moved to Austin, Texas, and the Respondent moved to live with her and applied for his Texas Driver's License and later, his United States passport while living with her.

[3]   Petitioner's father intended for his son to have dual citizenship in the United States and in Mexico, a dual citizenship that the Immigration Judge noted "many Mexicans enjoy" in his Order Denying Motion to Reconsider Termination.

more.  Ingrid's sister, Adriana, arrived at Conchita's home in the evening, just a few hours after the Petitioner's birth.

27.     Ingrid registered the Petitioner's birth several weeks after his birth, the delay owing to her responsibilities caring for her newborn, nursing him, and caring for her mother. Ingrid also did not have a car to go to the office of Vital Statistics to register the Petitioner's birth.

28.     Ingrid traveled back to Mexico in early May, 1995, as her father had a health crisis, obtained a new passport to replace her expired passport, and returned to the United States on May 20, 1995. Thereafter, she traveled back and forth between Mexico and the United States, as needed to care for her mother and father during their respective health crises, and when she took the Petitioner with her, presented border crossing cards that she completed using his Mexican birth certificate, as she did not have his United States birth certificate.  Ingrid ultimately found the Petitioner's United States birth certificate in a file drawer after Conchita's death when she was clearing out her house to sell it.[4]

29.     After Conchita's death, Ingrid's sister Adriana moved to New Jersey in connection with her very demanding employment.  Carla, Ingrid's other sister, lived in Mexico at the time of the Petitioner's birth.  There was therefore no family left in Utah for the Petitioner to live with, and he returned to Mexico with his parents.

30.     Petitioner attended day care and Pre-K in Ogden, Utah, and elementary and middle school and part of high school in Veracruz, Mexico.  When he was in high school, his

---

[4]  Conchita Staufert passed away on September 1, 1999.  At that time, Ingrid was six months pregnant with her daughter, and remained in Ogden, Utah, to clean out her mother's home and sell it, and for her daughter's birth.

aunt Carla had moved to Austin, Texas, and Petitioner requested to live there with her, as he was a citizen of the United States.  He attended Bowie High School in Austin, Texas.  Petitioner asked his aunt Carla to help him apply for a United States passport, and on October 23, 2014, Petitioner received his United States passport from the passport agency, without incident.

31.     Petitioner graduated from high school at Bowie High School and enrolled in college at Briar Cliff University in Sioux City, Iowa, where he was awarded a soccer scholarship. Petitioner traveled on his United States passport on several occasions, to Europe, to South America and to Honduras to volunteer with his church, all without incident.

32.     Petitioner began working at Unity Point Health, in Sioux City, Iowa, one half of the time at the phlebotomy unit taking blood samples of patients, and one half of the time in the overnight shift of the mental health unit.   Petitioner planed to begin his Masters Degree studies at Briar Cliff University in January of 2021, majoring in psychology.  When he was promoted and received a raise in the summer of 2022 from Unity Point Health, however, he decided to reward himself with a vacation on board a Royal Caribbean Cruise Line ship for a seven day cruise to the Bahamas, ending in Labadee, Haiti, with his roommate.

**THE RESPONDENTS**

33.     On or about October 23, 2014, the Respondent, **TOMMY TOWNER**, received a referral from a United States Passport Agency in or around Austin, Texas, concerning an application for a United States passport filed by the Petitioner.

34.     The passport agency had obtained a Mexican birth certificate, in Spanish, for the Petitioner, which contained a date of birth earlier than the United States birth certificate presented by the Petitioner to receive his United States passport.

14

35.     The passport agency had issued the United States passport to the Petitioner, but nonetheless sent the referral to the U.S. Department of State Diplomatic Security Service, which was received by Respondent, **TOMMY TOWNER a/k/a TEDDY TOWNER ("TOWNER")**.

36.     **TOWNER**, who was then in his 20s, and who may have been a newly hired, reviewed the referral from the passport agency, which contained the untranslated Mexican birth certificate issued days after the Petitioner was born.  **TOWNER** reviewed State Department data bases and two border crossing cards issued in 2000, when Petitioner was five years old, and in 2011, when he was 16 years old, which Petitioner could not have completed applications for or signed as he was a minor.

37.     Eight years later, on or around March 30, 2022, **TOWNER** visited the home of Carla Staufert-Sevier, one of the Petitioner's aunts.  Carla Staufert-Sevier spoke with the Respondent, but advised him that she was not the aunt who was present on the day of the Petitioner's birth on April 1, 1995 because she was living in Mexico at the time.  She gave him the name and number of her sister, Adriana Bury, but **TOWNER** did not call Adriana Bury.

38.     Carla Staufert-Sevier then asked Respondent, **TOWNER**, if he wanted to speak with the Petitioner's mother in Mexico.  She then called her sister, put her on Face-Time, and Respondent spoke with her for approximately five minutes.

39.     Following this five minute conversation, on April 4, 2022, the Respondent, **TOWNER**, sent an email to Petitioner's mother asking for documents reflecting the Petitioner's presence in the United States at an early age.  Specifically, the Respondent asked: "Are there any records of schooling at a young age?  Or anything else that could place them in Utah from a young age?"  Petitioner's mother provided the Respondent with Petitioner's Certificate of

Dedication at their Church dated June 1, 1995.  In later emails that day, Petitioner's mother send Immunization Records from the State of Utah Department of Public Heath containing vaccinations beginning in June of 1995 (**Exhibit "C"**).

40.     At some point thereafter, the Respondent, **TOWNER**, sent a report to the United States Attorney in San Antonio, Texas, stating that there was evidence of fraud and requesting that the Petitioner be charged with passport fraud and false claims to United States Citizenship.

41.     The Assistant United States Attorney in San Antonio, Texas, received the information from **TOWNER**, but, after review, declined to prosecute the Petitioner.

42.     Nonetheless, on April 21, 2022, **TOWNER** then took it upon himself to pursue the Petitioner by contacting the Texas Department of Public Safety, sending a letter advising the Agency that the driver's license issued to the Petitioner may have used his United States birth certificate to obtain his Texas driver's license, which he alleged to have been procured by fraud. In the letter entitled "For Awareness and any action deemed necessary," **TOWNER** references the (untranslated) Mexican birth certificate (issued when the Petitioner was days old) and border crossing cards issued upon an application which he alleges Petitioner filled out (when he was five or 16 years old).  In the letter, **TOWNER** states that the case against Petitioner for passport fraud and false claims to U.S. citizenship "may be proven but the case does not meet the prosecutor's admission criteria.  He then states: "This information is provided to your agency to take whatever action you deem necessary regarding the individual and/or fraudulently filed record." (**Exhibit "D"**)

43.     Also on April 21, 2022, **TOWNER** took it upon himself to pursue the

Petitioner by contacting the Office of Vital Records and Statistics, Salt Lake City, Utah, sending a letter advising that Agency that the birth certificate issued to Petitioner's mother there was procured by fraud.  In the letter entitled "For Awareness and any action deemed necessary," **TOWNER** references the untranslated Mexican birth certificate (issued when the Petitioner was days old) and border crossing cards issued upon an application which he alleges Petitioner filled out (when he was five or 16 years old).  In the letter, **TOWNER** states that the case against Petitioner for passport fraud and false claims to U.S. citizenship "may be proven but the case does not meet the prosecutor's admission criteria because the Subject has no criminal record." He then states: "This information is provided to your agency to take whatever action you deem necessary regarding the individual and/or fraudulently filed record."  (**Exhibit "E"**)

## EVENTS GIVING RISE TO CLAIMS

44.     Before dawn on Sunday, September 18, 2022, Petitioner was in his cabin, sleeping, as the cruise ship he took for his first vacation in many years docked in Miami, but had not yet disembarked.  He had been out late the night before with his roommate celebrating their cruise.  He answered the door and two ICE officers told him that he needed to come with them. Petitioner was taken into custody in his cabin by the officers who barely gave him time to grab his belongings.  Petitioner had luckily started to pack the night before, although he still doesn't know if he left things because everything was so fast.

45.     Immigration and Customs Enforcement escorted him off the ship and once he was off they handcuffed him and told him there were "some irregularities with him."  He asked if it was necessary to handcuff him and they told him it was "protocol."  Petitioner was not advised why he was being arrested, nor of the charges against him.   They took his belongings and then

took him to Krome Detention Center.   Without reading him his rights, Immigration and Customs

Enforcement began to  question him.  They took his Record of Sworn Statement in Proceedings

under Section 235(b)(1) of the Act before advising him of the charges against him, and before he

was improvidently placed in removal proceedings. After some time, they told him he was going

to be transferred and then they took him to Broward Transitional Center, 3900 N. Powerline

Road, Pompano Beach, Florida, where he was detained until November 17, 2022 at 8:00 a.m.,

one day less than two months after he arrived.   During this time, Petitioner repeatedly asked why

he was being held, and during his detention, repeatedly asked to speak with his deportation

officer, or his supervisor, to no avail.

     46.    The Department of Homeland Security, Immigration and Customs Enforcement

held Petitioner for five days at Broward Transitional Center, without advising him of the charges

against him.  On September 22, 2022, Petitioner was finally advised of the charges against him,

by service of a Notice to Appear dated September 21, 2022 upon him.  The charges in the Notice

to Appear were that he had made false claims to United States Citizenship, that he procured an

immigration benefit by fraud, and that he had attempted to enter the U.S. without a valid entry

document.

     47.    The third charge was without foundation because the Petitioner had a valid United

States passport in his possession on September 18, 2022.   On September 21, 2022, Petitioner's

passport was revoked (**Exhibit "F"**), but on September 18, 2022, when he was arrested, the

passport was valid.  Notwithstanding, despite the clear lack of foundation for the charge, the

Department of Homeland Security charged Petitioner as an "Arriving Alien, " thus rendering him

ineligible for bond, so that they could continue to detain him.

48.     The two other charges stemmed from the referral from the Passport Agency that issued Petitioner's United States passport on October 23, 2014, to the State Department, after identifying a Mexican birth certificate for the Petitioner with a date that was earlier than that appearing on his United States passport.  That Mexican birth certificate, which has never been translated by any Respondent or any employee, nor anyone associated with the Respondents, has been identified as "devoid of any probative value and shall be considered as forged," and thereby declared invalid, under the laws of Mexico where it was issued, and thus, in the United States where it was presented.  That untranslated Mexican birth certificate was relied upon by the U.S. Department of State, Diplomatic Security Service, led by Investigator **TOWNER,** to initiate a threadbare, shoddy "investigation" which led to the unlawful arrest and detention of the Petitioner.  The entirety of the investigation, the arrest, the detention, and the charges against the Petitioner were based upon an that invalid document.

49.     Undersigned counsel filed an E-28 Notice of Appearance Before the Immigration Court on September 28, 2022 and on September 29, 2022, filed a Motion to Terminate, attaching the Petitioner's United States birth certificate and his United States Passport, and arguing that the Immigration Judge did not have jurisdiction over the Petitioner, who was a United States Citizen.

50.     The Office of the Principal Legal Advisor, **NELSON PEREZ** and **EVAGELIA SOLOMOS**, Assistant Chief Counsel, filed the evidence that it had to support the Notice to Appear issued on September 21, 2022 in a Notice of Filing on September 30, 2022.  This consisted of the Mexican birth certificate, which still had not been translated from Spanish into English, and a letter from the State Department revoking his United States passport, based upon the Mexican birth certificate.  The letter revoking Petitioner's passport was sent to his home

address and delivered to his roommate on September 28, 2022, although it was well known that he was incarcerated at Broward Transitional Center at that time, and not at home to receive the notice.

51.     At an initial Master Calendar[5] on October 4, 2022, undersigned counsel argued that the Immigration Judge did not have jurisdiction over the Petitioner, who was a United States Citizen.  In support, beyond the previously filed United States birth certificate and United States Passport, undersigned counsel filed a Declaration Under Penalty of Perjury of Adriana Bury, Petitioner's aunt and Ingrid's sister, attesting to the fact that she was present on the day of the Petitioner's birth in Ogden, Utah, arriving a few hours after his birth, and a Vaccination Certificate from the Department of Health for the State of Utah, for the Respondent, reflecting vaccinations beginning in early June, 1995.

52.     The Immigration Judge stated that he wanted more time to hear full argument and receive evidence and set a special set Master Calendar on a "contested Notice to Appear" for October 14, 2022.

53.     On October 11, 2022, the Department of Homeland Security filed an Opposition to the Motion to Terminate and the Amended Motion to Terminate.  The basis for the Government's Opposition was an investigation by the U.S. Department of State initiated after learning that the registration of the Respondent's birth in Mexico on the invalid Mexican birth certificate, was dated on a date prior to the date of registration of his birth in the United States.

---

[5]  A master calendar in immigration proceedings is the same as an arraignment in criminal proceedings.  The charges against the alien contained in the Notice to Appear are read, the alien responds to the charges, and announces any relief that he or she might have to the charges.  At that point, an Individual Hearing on the merits of the relief announced is set, and a date for filing documents in support of the merits announced prior to hearing is set.   The first sentence of every Notice to Appear is "You are not a citizen of the United States."

The Government argued that the United States birth certificate was a fraud because of the earlier date of the Mexican birth certificate.  Because of that, the Government alleged, the Respondent's United States passport was obtained by fraud.  The Government went further, however, in arguing that the Respondent's Texas driver's license was also obtained by fraud, and that there was inherent fraud in the Respondent's entries into the United States prior to obtaining his United States passport, where the Respondent entered using a Mexican passport and a United States issued B2 visitor's visa, and that these entries were numerous.[6]

54.     The parties appeared for a Master Calendar on a contested Notice to Appear on  October 14, 2022, and the Immigration Judge refused to allow the Mexican birth certificate filed by the Department of Homeland Security, Office of the Principal Legal Advisor into evidence, because it was in Spanish without the required English translation.  Respondent, **EVAGELIA SOLOMOS**, would have known that the untranslated birth certificate required translation before it would be admitted into evidence, as she was a prosecutor prior to joining the Office of the Chief Counsel, and was well aware that documents not in English are not admissible into evidence without a certified translation from the foreign language into English.

55.     Undersigned counsel immediately moved the Court to dismiss and terminate, as the Department of Homeland Security had no evidence and therefore, could not meet its burden of proof to prove alienage by clear and convincing evidence, at which point the Immigration Judge did not have jurisdiction over the Petitioner, a United States citizen.

56.     The Assistant Chief Counsel, **EVAGELIA SOLOMOS**, announced that she would "prove her case through the Respondent," to which undersigned counsel vigorously

---

[6] In reality, the border crossing cards that were applied for in 2000 when the Petitioner was five years old, and in 2011 when the Petitioner was 16 years old could not have been completed by him as he was a minor.

objected, citing *Matter of Tang*, 13 I&N Dec. 691, 692 (BIA 1971) ["Upon presenting evidence

that the respondent is an alien*,* the Service may call upon him to testify and may use his

testimony to find that deportability is established"]; 8 CFR §§1240.10(c) & (d).   Respondent's

counsel argued that the Government could not meet its burden to establish alienage by clear and

convincing evidence and could not use the Respondent's testimony to meet that burden.

Respondent's counsel further argued that it constituted impermissible burden shifting as

discussed in detail in *Murphy v. INS*, 54 F. 3d 605 (9th Cir. 1995) and numerous cases cited

therrein.   The Immigration Judge read portions of the decision in *Matter of Tang, supra*, into the

record, and, not finding the portion of the case cited by the Respondent's counsel, stated that the

case did not stand for the proposition put forth by Respondent's counsel.   The Immigration Judge

then stated that he was not bound by precedent set in the 9th Circuit in *Murphy v. INS*, 54 Fed.3d

605 (9th Cir. 1995) which was only persuasive in the absence of case law in the 11th Circuit.   The

Immigration Judge stated that the Government could establish alienage through cross-

examination of the Respondent.

57.     The Immigration Judge allowed the Assistant Chief Counsel to question the

Respondent over vigorous objections by undersigned counsel, which were all overruled.   At one

point, the Assistant Chief Counsel announced that she needed a bathroom break, the proceedings

were adjourned, and when she returned, an English translation of more of the Mexican birth

certificate, but not the whole document, suddenly appeared in the docket, again, over objections

from undersigned counsel.

58.     After over three hours of hearing, the Immigration Judge entered an oral Order

terminating proceedings on October 14, 2022, based upon the fact that the Department of

Homeland Security had fully failed to meet its burden to establish alienage at the special set Master Calendar on a contested Notice to Appear.  Although none of what the Immigration Judge dictated at that time was a part of the Order when entered of record on October 18, 2022, which was a form order, undersigned counsel filed a Motion to Modify or Redact any testimony by the Petitioner or Ingrid, his mother, before the Order was entered, which was never been ruled upon on the merits but found to be moot after entry of the Order Denying Motion to Reconsider.

59.     The Department of Homeland Security filed a Motion to Reconsider Termination on October 18, 2022, just before the Order was entered, claiming that Ingrid was untruthful in her testimony.  The basis for the Motion to Reconsider was a search conducted after the hearing on "entry/exit" records, stating that these revealed that Ingrid was not present in the United States on the date of the Petitioner's birth, and that a search of records in Utah did not reveal a certificate as a nursing assistant for Conchita Staufert, Ingrid's mother, as she testified.  The Immigration Judge entered an Order directing the Petitioner to file a response to the Motion to Reconsider Termination within ten (10) days, or October 28, 2022 or the Motion to Reconsider Termination would be deemed unopposed.

60.     On October 28, 2022, Petitioner's counsel filed a Response to the Motion to Reconsider Termination.  Initially, Petitioner argued that a Motion to Reconsider could not rely upon new facts, but rather, an error in the application of the law, which was not the case as the Order of the Immigration Judge terminated proceedings because the Department of Homeland Security had failed to meet its burden to establish alienage by clear and convincing evidence. Petitioner attached as exhibits Petitioner's mother's Mexican passport issued on March 20, 1990 which expired on March 19, 1995, contained an entry stamp in Dallas, Texas, on January 28,

23

1995, fully refuting the claims regarding "entry/exit" records.    Petitioner also attached

certificates issued in Long Beach, California, where Conchita Staufert was certified as a medical

assistant, fully refuting the claim regarding Petitioner's mother's truthfulness regarding her own

mother's certifications.  Petitioner also attached the Affidavit of Petitioner's mother, attesting to

the facts surrounding Petitioner's birth, and the Affidavit of Petitioner's father, attesting to the

fact that he had registered the birth without telling his wife for six or seven weeks, consistent

with an Affidavit filed in response to the Opposition to Motion for Termination that she did not

learn that her husband had registered the Petitioner's birth until several weeks later when she was

advised that she needed to return to Mexico to care for her own father .   Petitioner also attached

an Affidavit of Adriana Bury, Petitioner's aunt, attesting to the fact that she was present on April

1, 1995 when Petitioner was born, and the next day, and although the day after that was a

workday and she was at work, that she was in communication with Ingrid and that she babysat

for Petitioner on numerous occasions in Ogden, Utah, after his birth.  In addition to the page with

the passport stamp on January 28, 1995 in the passport which expired on March 19, 1995,

Petitioner attached the entirety of Petitioner's mother's passport valid from March 20, 1990 to

March 19, 1995 and on her passport valid from May 20, 1995 to May 20, 2000.

61.    Of greater importance, however, was an exhibit to the Response to the Motion to

Reconsider Termination containing a full translation of the Mexican birth certificate, as the

translation uploaded in a hurry during hearing on October 14, 2022 only translated select portions

of the birth certificate, the names and dates and places that were already in English in the

document.  That fully translated Mexican birth certificate revealed that the certification of the

electronic birth certificate was not signed - "Fallo la firma" which means, "The Signature

Failed."   An attorney in Mexico reviewed the document and provided an Informative Note

regarding the Mexican Birth Certificate that identified the Mexican civil law regarding electronic

filing of documents in Vital Statistics and stated that the document filed by the Department of

Homeland Security was contrary to Mexican law, as in order to be valid, the electronic document

must contain the name, address and signature of the individual certifying the document.  As a

result, the opinion of the Mexican attorney was that under Mexican law, the Mexican birth

certificate was "devoid of any probative value, and shall be considered as forged." (**Exhibit**

**"G"**).

     62.     Petitioner also argued that as a United States Citizen, his arrest, detention, and

charges levied against him placing him in removal proceedings violated Immigration and

Customs Enforcement's own regulations, which stated:

> If  the evidence indicates that a person is a United States Citizen, or if the evidence
> outweighs contrary evidence, the individual should not be arrested or taken into custody
> and no Notice to Appear should be issued.  Memo, Morton, Ass't Sec., ICE Superceding
> Guidance on Reporting and Investigating Claims to United States Citizenship, Policy No.
> 16001.1. FEA No. 045-01 (Nov. 19, 2009), reprinted in 15 Bender's Immigration Bulletin
> 438, 464-66 (Mar. 15, 2010).   If [there is] probative evidence that the detainee is a USC,
> he should be released.  In any case in which there is uncertainty about whether the
> evidence is probative of USC, ICE should not detain, arrest, or lodge an immigration
> detainer against the individual and should cancel any immigration detainer already lodged
> by ICE**.**  Also, ICE has an affirmative obligation to train state and local officers under
> 287(g) agreements in this memo.  ICE Policy Guidance 16001.2, Investigating the
> Potential U.S. Citizenship of Individuals Encountered by ICE (Nov. 10, 2015), AILA
> Doc. No. 19051332.

     63.     The Department of Homeland Security did not stop when they learned that the

entire basis of their investigation begun in 2014, and the arrest, detention, and charges against the

Petitioner eight years later were based upon an invalid document.

     64.     On November 4, 2022, without leave or order of Court, **EVAGELIA**

**SOLOMOS**, the Assistant Chief Counsel filed a "wet" birth certificate purportedly signed by the Petitioner's mother on April 3, 1995 in Mexico, to support its claim that the Petitioner's mother could not have been in Ogden, Utah on April 1, 1995.

65.    In response, on November 7, 2022, Petitioner filed his Response attaching as exhibits an Affidavit of Petitioner's mother that she did not sign the  "wet" birth certificate and that the signature was not hers.  In support, Petitioner's mother attached seven exemplars of her true signature, including the two affidavits that she had previously filed of record, both with a second signature on the translation for the notary, and her signature on her passport valid from March 20, 1990 to March 19, 1995 and on her passport valid from May 20, 1995 to May 20, 2000, as well as her voter's registration card, all demonstrating that she did not sign her full name, Ingrid Staufert Roldan, but rather, Ingrid Staufert R.

66.    In her Affidavit, Petitioner's mother further stated that she was advised by an attorney in Mexico who had examined the purported "wet" birth certificate, that the document had been altered.  In support, Petitioner also attached a second Informative Note from the Mexican attorney dated November 7, 2022, stating that after review, he found the document to be apocryphal, or "of doubtful authenticity, although widely circulated as true," based upon Mexican law that no documents may contain any English words, and the word "LABEL" clearly appeared on the document.  Further, he stated that the Unique Population Control Number on the "wet" birth certificate was different from that on all Mexican documents, which contains numbers and the first two letters of the mother and of the father.  The number appearing in the space for the Unique Population Control Number contained only numbers, and less numbers than are contained in the Unique Population Control Number as well.   Additionally, the document

contained the name "Ingrid Stauf Staufert" as a witness to the name of "Ingrid Staufert Roldan," which was highly unusual.   (**Exhibit "H"**)  Petitioner's father also executed an Affidavit, attesting to the fact that when he went to the Clerk's office to register the Petitioner's birth, his wife was not with him.  Petitioner's aunt executed an Affidavit attesting to the fact that she always picked up the Petitioner's mother at the airport when she arrived in the United States, as she did not have a car, and that she did so on January 28, 1995 and that she returned her to the airport to fly back to Mexico in early May, 1995.

67.     On November 10, 2022, the Department of Homeland Security filed a second "wet" birth certificate, claiming that this was in response to Paragraph 7 of the Petitioner's mother's affidavit filed on November 7, 2022 which complained of the translation, but there was no complaint about the translation in Petitioner's mother's affidavit.  What she said was that the document was altered.  The Department of Homeland Security stated that it was filing a translated "wet" birth certificate, "without admitting any irregularities or errors."

68.     On November 13, 2022, Petitioner filed a Response to the Third Supplemental Filing in Support of the Motion to Reconsider Termination, containing another Informative Note from the Mexican attorney, who had taken both "wet" birth certificates to the Clerk in the Vital Statistics office where the "wet" birth certificate was purportedly issued.  In addition to finding the same issues as with the first, that the Unique Population Control Number still was in an incorrect format and did not have the required letters, just numbers, the Clerks advised that the fact of translating was an alteration, as any translation must be done on a separate page, and the fact of translating on the original document altered the document, rendering it apocryphal.  The Clerk further advised that neither "wet" birth certificate was in the form used by that office, that

the sequential numbers were the same and the stamp was in the same place on both documents, rendering them invalid.  Victor M. Vargas G., Esq., stated that "[n]otwithstanding the above, a translation cannot, in any way, validate an apocryphal document, because it would only be translating a false document. (**Exhibit "I"**).   Petitioner repeated the affidavits that had been filed, all of which were uncontested, and requested a decision on the Motion to Reconsider Termination by the Immigration Judge, denying the motion.

69.    On November 15, 2022, the Immigration Judge entered an Order denying the Motion to Reconsider Termination, and reaffirming the Order Terminating Proceedings that had been entered on October 14, 2022.  The Immigration Judge stated that new facts could not be stated in a Motion for Reconsideration, but regardless, that the "entry/exit" records were available to the Department of Homeland Security at the time of hearing on October 14, 2022 and therefore, could not support a Motion to Reconsider.  The Immigration Judge specifically found as facts that the Petitioner was born in Ogden, Utah, on April 1, 1995, that he was a citizen and native of the United States and also a citizen of Mexico.  Importantly, the Immigration Judge found both the Petitioner and his mother to be credible when they testified, a significant component of an Order of an Immigration Judge although unnecessary in the matter before him.

70.    The Department of Homeland Security filed a Notice of Appeal to the Board of Immigration Appeals immediately prior to entry of the Order Denying Motion to Reconsider. The Notice of Appeal, which challenges the entry of an Order of Termination where there was no admissible evidence of alienage and therefore, the Department of Homeland Security, Office of the Principal Legal Advisor, did not carry the threshhold burden of proof to establish that the Petitioner was an alien and subject to removal proceedings was filed with the knowledge that the

entire basis for the investigation, arrest, detention, charging and placement in removal

proceedings of the Petitioner was an invalid document, a document described as "devoid of any

probative value and shall be considered as forged," and that their subsequent filings were

revealed to be altered and apocryphal.

71.     The Department of Homeland Security did not release the Petitioner on the day of

the Order.  On November 16, 2022,  Petitioner's counsel wrote an email advising that their

continued detention of a United States Citizen violated Immigration and Customs Enforcement's

own regulations, and that if Petitioner were not released by 5:00 p.m., she would include a count

seeking monetary damages from all parties involved in the unlawful detention of a United States

Citizen under the Federal Tort Claims Act.

72.     Shortly before 5:00 p.m., Petitioner's counsel received a telephone call from

**MITCHELL DIAZ**, the Immigration and Customs Enforcement Supervisor advising that "HQ"

had sent an email directing the release of the Petitioner.

73.     In that telephone call, **MITCHELL DIAZ,** advised that the Petitioner

would be fitted with an ankle bracelet with a GPS monitor, "until a decision on the appeal,"

despite protestations from Petitioner's counsel that this infringed upon the liberty of a United

States Citizen.  **MITCHELL DIAZ** advised that the Petitioner was being released on an Order

of Release on Recognizance ("OREC") which is a form of supervised release for aliens in

custody proceedings but did not provide Petitioner's counsel with a copy of the paperwork given

to the Petitioner.  Petitioner later provided counsel with a copy of the OREC paperwork

(**Exhibit "J"**).  **MITCHELL DIAZ** advised that the Diplomatic Security Service was

"involved" in the decision-making regarding the Petitioner's release and would continue to be

involved.  **MITCHELL DIAZ** also inquired where the Petitioner was going, and whether

Petitioner's counsel would be the attorney of record for criminal proceedings that would be

initiated against Petitioner, relating to his United States passport, despite the fact that the U.S.

Attorney in San Antonio, Texas had previously declined to prosecute.

74.     In addition, **MITCHELL DIAZ** inquired about the location of the Petitioner's

sister, who was alluded to in the Amended Notice to Appear attached to the Motion to

Reconsider Termination filed by the Department of Homeland Security, although she was not in

removal proceedings and is a United States Citizen.

75.     It is patently clear that the Department of Homeland Security, Immigration and

Customs Enforcement and the Office of the Principal Legal Advisor bear malicious animus

towards the Petitioner, and his family, and are retaliating against the Petitioner,  having been

exposed as devoting government resources for an investigation begun late in 2014, without

action for eight years, culminating on September 18, 2022 with the arrest, detention, charging,

and placement in removal proceedings based upon a document which has been exposed as

"devoid of any probative value and shall be considered as forged" in the country in which it was

issued and therefore, invalid in the United States, and their further attempts to cover up that fact

have been exposed as alterations of a document and apocryphal.

76.     In his Order of November 15, 2022, the Immigration Judge denied the Department

of Homeland Security's Motion to Reconsider Termination, confirming termination because they

had failed to meet their burden to establish alienage by clear and convincing evidence, and

specifically finding that the Petitioner is a United States citizen.  Any actions in contravention of

that Order by the Department of Homeland Security or Immigration and Customs Enforcement

are in contravention of that valid Court Order, but they do not seem to care.

77.     Petitioner has suffered and continues to suffer irreparable harm as a result of his unlawful arrest, detention, charging and placement in removal proceedings.  Petitioner sustained great physical, emotional and mental distress in his arrest without advising him of the charges against him, in his prolonged detention, and now, in his release but continued control over his body and his liberty by the Department of Homeland Security, Immigration and Customs Enforcement in placing an ankle bracelet on his leg and service of OREC paperwork served to aliens in custody proceedings, including a requirement to appear at Immigration and Customs Enforcement.  Petitioner lost his employment, which has caused him great distress, as he not only needed that employment to provide income to meet his daily needs, but enjoyed working in the phlebotomy unit and the mental health unit at Unity Point Health, as much as the patients there needed him.  His parents have suffered irreparable harm and great mental and emotional anguish as they feel responsible for the manner in which they handled the registration of his birth, although the Petitioner's mother was limited in her ability to take action by her responsibilities to her own mother, to her newborn child, and was without a vehicle to travel to the office of vital statistics to register the Petitioner's birth.  Both Petitioner's mother and father have voiced concern that the manner in which their son was targeted, investigated, arrested, detained, charged, placed in removal proceedings, and then fitted with an ankle bracelet, and served with OREC documents used for aliens in custody proceeding, including required reporting to a duty attorney at Immigration and Customs Enforcement beginning on November 30, 2022, all based on an invalid document, as they thought actions of this type occurred in third world countries, not the United States.   (Petitioner's Affidavit attached as **Exhibit "K"**).

78.     Petitioner has exhausted all administrative remedies and there are no further administrative acts Petitioner can take to obtain the relief sought.  However, exhaustion is not required where (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995).  All four circumstances are present in this case. Further, exhaustion may be excused if "the interest of the individual in retaining prompt access to a federal judicial forum [outweighs] countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

79.     Petitioner has had to retain undersigned counsel to represent him in this matter and is obligated to pay her a reasonable fee therefore.  Plaintiff has expended significant attorney's fees during the last two months related to his unlawful arrest, detention, and placement in removal proceedings, and is entitled to his attorney's fees under applicable law, including the Equal Access to Justice Act, 5 U.S.C. §504 and 28 U.S.C. §2412.

## CAUSES OF ACTION

## COUNT ONE
## SUBSTANTIVE DUE PROCESS

80.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 79 above and further alleges:

80.     All persons residing in the United States are protected by the Due Process Clause of the Fifth Amendment.  *See, Zadvydas*, 533 U.S. at 693-94;  *Plyler v. Doe*, 457 U.S. 202, 210 (1987)); *Matthews v. Diaz*, 536 U.S. 67 (1976); *Yamataya,* 189 U.S. 100-01; see also *Rusu v. INS*, 296 F. 3d 316, 321-22 (4th Cir. 2002); *Wilson v. Zeithern,* 265 F. Supp. 2d 628, 634 (E.D.

Va. 2003).

81.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty or property without due process of law." U.S. Const. Amend. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process clause from arbitrary government action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Youngberg v. Romeo*, 457 U.S. 307 (1982).  In *Foucha,* the High Court noted: "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U. S. 113, 125 (1990). *See also United States v. Salerno*, 481 U. S. 739, 746 (1987);  *Daniels v. Williams*, 474 U. S. 327, 331 (1986).   Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. *Youngberg v. Romeo*, 457 U. S. 307, 316 (1982). "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Jones, supra, at 361 (internal quotation marks omitted). We have always been careful not to "minimize the importance and fundamental nature" of the individual's right to liberty.  *Salerno, supra*, at 750. The vital liberty interest is at stake when an individual is subject to detention by ICE.  *See Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem."); *Kiareldeen v. Reno*, 71 F. Supp.2d 402, 409-10 (D.N.J. 1999) (Holding that, in analyzing due process in the immigration context, the first factor in the procedural due process analysis, "the petitioner's private interest in his physical liberty, must be accorded the utmost weight.").  Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due

Process clause protects. *Zadvydas*, 533 U.S. at 690. Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for incarceration "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690.

82.     Petitioner's detention from September 18, 2022 through November 17, 2022, and his release with an GPS ankle bracelet strapped to his leg, and service with OREC documents used for aliens in custody proceedings including routine reporting to Immigration and Customs Enforcement beginning on November 30, 2022, facilitating continued monitoring by the Department of Homeland Security, Immigration and Customs Enforcement, violates substantive due process by depriving him of his fundamental liberty interest in remaining free from detention.   Petitioner is still being detained by the Department of Homeland Security, Immigration and Customs Enforcement, he is just not physically detained in Broward Transitional Center.  Government detention violates an individual's fundamental liberty interest unless the detention is "narrowly tailored to serve a compelling government interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).  Non-punitive detention must present a "special justification" that "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. This is particularly so where the detention has been proven to be unlawful, as the Petitioner is not an alien within the meaning of 8 U.S.C. §1101(a)(3), but a United States Citizen, one whose proceedings have been terminated by Order of the Immigration Judge first on October 18, 2022, and then again on November 15, 2022 because the Department of Homeland Security could not establish that he was an alien, and properly in removal proceedings and where the Immigration

Judge has specifically found that he is a citizen and native of the United States.

83.     Petitioner's detention from September 18, 2022 through November 17, 2022 and the continued infringement upon his liberty by monitoring his movements through a GPS ankle bracelet by Immigration and Customs Enforcement and continuing control through service of OREC documents used for aliens in custody proceedings, which contain requirements to report to a duty attorney at Immigration and Customs Enforcement beginning on November 30, 2022, is unlawful, based in a refusal to accept the lawful Order of the Immigration Judge on October 18, 2022 and again on November 15, 2022.  It is based upon the refusal of Department of Homeland Security, Immigration and Customs Enforcement, and the Office of the Principal Legal Advisor to accept that they have been exposed to have relied upon an invalid document, one that is "devoid of probative value and should be considered as forged."  It serves no compelling government interest.

84.     No special justification exists for the continued infringement upon the Petitioner's liberty by placing a GPS monitored ankle bracelet on his body and service of OREC paperwork which is used for aliens in custody proceedings, including a requirement to report to a duty attorney at Immigration and Customs Enforcement beginning on November 30, 2022.  The Immigration Judge found on October 18, 2022 and again on November 15, 2022 that the Department of Homeland Security had failed to meet its burden of proof by clear and convincing evidence that the Petitioner is an alien and that removal proceedings against him were proper. The Immigration Judge found specifically that the Petitioner is a citizen and native of the United States and a citizen of Mexico.  The Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor were exposed as basing their

entire eight year investigation of the Petitioner, his arrest, detention, charges and placement in removal proceedings on a document which is "devoid of any probative value and shall be considered as forged." The Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor have been exposed as altering government documents in Mexico to support their continued targeting and relentless pursuit of the Petitioner. Petitioner should have been released from detention, with apologies, without any attempt to further constrain his liberty, and be allowed to return to his home free from unlawful intrusion.

85.     Petitioner is not a flight risk or a danger to the community. He is a United States Citizen unfairly targeted, unlawfully arrested and detained, and now, his personal liberty is infringed upon, without legal justification therefor. The further restraint upon his liberty is a violation of his substantive due process rights. There was no justification for placement of a GPS monitored ankle bracelet on a United States Citizen or service of OREC paperwork, which is used for aliens in custody proceedings, including a requirement that he appear before Immigration and Customs Enforcement on November 30, 2022, where an Immigration Judge had terminated proceedings, based upon the failure of the Department of Homeland Security to meet its burden of proof to establish that he is an alien, and properly in removal proceedings. The pendency of an appeal of that well settled law, and of that well reasoned decision should not be perceived as providing additional power to infringe upon the personal liberty of a United States Citizen by the Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor, especially under the circumstances of this case.

## COUNT TWO
## NEED FOR EQUITABLE RELIEF

85.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 79 above and further alleges:

86.     There is a real and actual controversy among the parties.  Petitioner has suffered and will continue to suffer irreparable injury as a result of the acts of the Respondents complained about herein.  Petitioner should have been released from unlawful detention when the Immigration Judge orally terminated proceedings on October 14, 2022 as that Order nullified the Notice to Appear and any right of the Department of Homeland Security to detain the Petitioner.  Petitioner should have been released from unlawful detention when the Immigration Judge terminated proceedings in writing on October 18, 2022, as that Order nullified the Notice to Appear and any right of the Department of Homeland Security to detain the Petitioner. Petitioner should have been released from unlawful detention when the Immigration Judge entered his Order Denying the Motion to Reconsider Termination on November 15, 2022. Petitioner was finally released from unlawful detention on November 17, 2022, but it required notice from Petitioner's counsel of her intention to file suit under the Federal Tort Claims Act seeking damages against the Respondents.

87.     However, the Department of Homeland Security the Immigration and Customs Enforcement have continued to detain the Petitioner, a United States citizen, by unlawful restriction of his liberty by initially fitting him with a GPS monitored ankle bracelet, and serving him with OREC paperwork reserved for aliens in custody proceedings including scheduled reporting to a duty attorney at Immigration and Customs Enforcement beginning on November 30, 2022, and confiscating his United States passport.

88.     Petitioner faces a realistic threat of being subjected to the Respondent's policies

and or practices in controvention of a lawful court order, of refusing to abide by immigration court orders and to continue to pursue him unlawfully, despite having the very basis for their investigation, arrest, detention, charging, and placement in removal proceedings exposed as "devoid of any probative value and shall be considered as forged."

89.     The Department of State has contacted the Division of Motor Vehicles in Texas urging them to revoke his driver's license which they claim was the product of fraud, has revoked his United States passport, and has contacted the State of Utah to revoke his United States birth Certificate, claiming that it is the product of fraud.  There is a realistic threat that the Department of Homeland Security, Immigration and Customs Enforcement will not stop but will next target his sister, who was not a party to the removal proceedings but whom they have indicated is in their sights.  All of these injuries will continue unless the actions of the Department of Homeland Security, Immigration and Customs Enforcement and the Office of the Principal Legal Advisor are declared to be unlawful and enjoined.

**COUNT THREE**
**CLAIM FOR RELIEF UNDER  28 U.S.C. §2201**

90.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1 through 79 above, and further alleges:

91.     This Count states a claim under for relief under 28 U.S.C. §2201 to reinstate the Petitioner's United States passport, as the provisions of 8 U.S.C. §1503 are not applicable to the facts of this case.

92.     The Petitioner was born in Ogden, Utah on April 1, 1995 and was issued a United States Birth Certificate from the Office of Vital Statistics of the State of Utah.   This was the genesis of the Petitioner's status as a United States citizen and national.

93.     The Petitioner was issued a United States passport on October 23, 2014.  A United States passport is only issued to United States citizens.

94.     The passport agency that issued the Petitioner's passport sent a referral to the Department of State, Diplomatic Security Services, raising an issue with respect to the Petitioner's United States citizenship, based upon an untranslated Mexican birth certificate that was dated earlier than the United States birth certificate.

95.     Thereafter, on April 21, 2022, the Department of State Diplomatic Security Services wrote letters to the State of Utah Department of Vital Statistics, requesting that the Petitioner's United States birth certificate be revoked, based upon a claim of fraud and a perceived issue with his United States citizenship.  Also on April 21,1 2022, the Department of State Diplomatic Security Services wrote letters to the State of Texas Department of Motor Vehicles requesting that the Petitioner's Texas Driver's License be revoked, based upon a claim of fraud and a perceived issue with his United States citizenship.

96.     The Department of State revoked the Petitioner's United States passport on September 21, 2022, claiming that there was fraud and a perceived issue with respect to his citizenship, based upon the untranslated Mexican birth certificate.

97.     The Petitioner was served with a Notice to Appear in removal proceedings on September 21, 2022, but the Immigration Judge terminated proceedings orally on October 14, 2022 and again in writing on October 18, 2022 when the Department of Homeland Security, Office of the Principal Legal Advisor, failed to carry their threshhold burden of proof to establish that the Petitioner was an alien and properly in removal proceedings.

98.     Petitioner is unable to obtain the return of his United States passport or to apply for

a new passport, without this Court's assistance.    Without his United States birth certificate, and

his Texas Driver's License, Petitioner is unable to apply for or to obtain a United States passport,

as he has no proof of citizenship or of identity.  The provisions of 8 U.S.C. §1503(a) are

inapplicable, as the issue of his citizenship arose with the referral from the passport agency

following issuance of Petitioner's United States passport, continued through the letter writing on

April 21, 2022 to seek revocation of his United States birth certificate and his Texas Driver's

License and not in connection with or arising from the removal proceedings, which were much

later.

99.    Petitioner requires this Court to take action under 28 U.S.C. §2201, to order the

Respondents to reinstate the Petitioner's United States Birth Certificate issued by the State of

Utah, and to reinstate his United States Passport, as this is the only way in which he may obtain

either.

**COUNT FOUR**
**DECLARATORY RELIEF  UNDER 28 U.S.C. §2201**

100.    Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth

herein, the allegations in Paragraphs 1 through 79 above and further alleges:

101.    This is a count for declaratory relief under 28 U.S.C. §2201 - Creation of Remedy.

102.    There is an actual controversy within this Court's jurisdiction, as the Respondents

wrongfully investigated, arrested, detained, charged and placed the Petitioner in removal

proceedings, beginning in 2014 to the present day and they continue to constrain his liberty by

placing him in supervised release, the OREC program designed for aliens, all stemming from an

untranslated document which has been found to be "devoid of any probative value and shall be

considered as forged" in the country in which it was issued.

40

103.     The Petitioner is a Untied States citizen.  The Immigration Judge terminated proceedings against him orally on October 14, 2022 and in a written, form order on October 18, 2022 because the Department of Homeland Security had failed to prove alienage by clear and convincing evidence and thereby, could not carry the threshhold burden of proof to prove that he was an alien and thereby, property in removal proceedings.  The Immigration Judge specifically found that the Petitioner is a United States citizen on November 15, 2022 in an Order denying the Motion to Reconsider Termination filed by the Department of Homeland Security.

104.     It is appropriate for this Court to declare the rights and other legal relations of the Petitioner and the Respondents.

### COUNT FIVE - DAMAGES - BIVENS ACTION

105.     Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations above and further alleges:

106.     This count states a cause of action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

107.     At all times material hereto, the Respondents, and each of them, were acting under color of Federal authority.

108.     The Respondents, and each of them, violated the United States Constitution and the Petitioner's rights thereunder, under the 4th, 5th and 6th Amendments to the U.S. Constitution of the Petitioner, as set forth herein, while under color of federal authority.

109.     By their actions, the Respondents, and each of them, took actions that were outside of the scope of their respective duties, were *ultra viros*, with intent to violate the Petitioner's Constitutional rights, maliciously with aforethought and disregard for the rights of

the Petitioner, while cloaked in the appearance of their official duties, under Federal authority.

109.   As a direct and proximate result of the actions taken by the Respondents, and each of them, while under color of Federal authority, intending to violate the Petitioner's Constitutional rights, with malice and aforethought, and did so, the Petitioner sustained physical, emotional and financial damages.

### COUNT SIX - CIVIL CONSPIRACY - 42 U.S.C. §1985(3) DEPRIVATIONOF PETITIONER'S CONSTITUTIONAL RIGHTS

110.    Petitioner re-alleges, reavers and incorporates by reference, as if fully set forth herein, the allegations above and further alleges:

111.   This Count states a claim under 42 U.S.C. §1985(3), Civil Conspiracy, Deprivation of the Petitioner of Rights and Privileges of a United States Citizen.

112.    At all times material hereto, the Respondents, **TOWNER** and **EVAGELIA SOLOMOS** ("**SOLOMOS**") and **MITCHELL DIAZ ("DIAZ")**, entered into an agreement with each other, to pursue the Petitioner to accomplish either an unlawful end, or a lawful end by unlawful means, resulting in damages to the Petitioner.

113.   The Respondents, **TOWNER, SOLOMOS** and **DIAZ**, specifically were engaged therein and did, or caused to be done, any act in furtherance of the object of such conspiracy, whereby the Petitioner was injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States.

114.   As more fully set forth hereinabove, the Respondents took action together based upon an untranslated document which they knew or should have known should have been translated, and if it was, that it would be found to be invalid, for an invalid purpose, the specific purpose of pursuing the Petitioner to cause him harm, specifically, to deprive him of his identity

and citizenship, and his rights and privileges of a citizen of the United States.  The Respondents intended to deprive the Petitioner of his liberty, to detain the Petitioner, indefinitely, and to remove him from the United States, in concert with or directed by **TOWNER**, who sought the Respondents assistance and coordination in achieving his goal: pursuing the Petitioner, depriving him of his rights as a United States Citizen, and causing him significant harm, after the Assistant United States Attorney in San Antonio rejected his request for prosecution of the Petitioner and notwithstanding that rejection.

115.    The Respondents, and each of them, took specific action in furtherance of their conspiracy, **TOWNER**, by contacting the Texas Department of Public Safety, the State of Utah Department of Vital Statistics, by revoking Petitioner's United States passport outright, by delivering the untranslated birth certificate to **EVAGELIA SOLOMOS**, or requesting her assistance in filing a case based upon that invalid document and other documents to impugn the Petitioner, regardless of validity; by creating "wet" birth certificates together with her or delivering these to her, which she then filed with the Immigration Court, and by continuing to be involved and directing the conditions of Petitioner's release with **DIAZ** and Immigration and Customs Enforcement;  **SOLOMOS**, by charging the Petitioner with not having a valid re-entry permit with knowledge that his United States Passport was still valid the day that he was removed from his cabin, but that enabled him to be charged as an "arriving alien," to deprive him of the ability to obtain bond to secure his release from Broward Transitional Center, by filing a document not in English knowing that it required translation, but if it did, that it would be found to be invalid, and then pursuing the Petitioner in improper examination after the Court disallowed that document into evidence, and the burden of proof to prove alienage had not been

met, by allowing fraudulent documents to be filed in Court, or by participating in their creation and filing, and then filing a baseless appeal to the Board of Immigration Appeals to conceal her actions in the Court below intending to extend the Petitioner's detention with Immigration and Customs Enforcement and **DIAZ**; **DIAZ**, by ignoring Immigration and Customs Enforcement Regulations and pursuing the Petitioner notwithstanding, placing him in the OREC program and affixing an ankle bracelet on him at the time of his release, with **TOWNER**'s direction and supervision over the conditions of the Petitioner's release, designed to detain the Petitioner without right and despite the law, all of these coordinated with one another for the express purpose of retaining custody over the Petitioner, depriving him of his freedom, violating his Constitutional rights, and rights available to him as a United States Citizen, imposing harm on the Petitioner and causing him to suffer physical, emotional and economic damages.  That these Respondents communicated with one another in furtherance of their conspiracy is clear from the facts recited hereinabove in this Petition.

116.    The actions of these Respondents were coordinated, taken in agreement, and authorized by or directed by the other Respondents named hereinabove, Officers of the U.S. Department of State, the Diplomatic Security Services, the Department of Homeland Security, Office of the Principal Legal Advisor, and the Department of Homeland Security, Immigration and Customs Enforcement.

117.    As a direct and proximate result of the coordinated actions of these Respondents, in furtherance of a civil conspiracy, the Petitioner has been damaged, physically, emotionally and financially, and pursuant to 42 U.S.C. §1985(3), the Petitioner so injured or deprived may recover damages occasioned by such injury or deprivation, against any one or more of the

conspirators, to be awarded by this Court.

## **PRAYER FOR RELIEF**

Plaintiff requests this Honorable Court to grant the following relief:

A.      Assume jurisdiction over this matter.

B.      Issue a Writ of Habeas Corpus directing Respondents to remove Petitioner from the OREC program, and cease and desist from all actions to physically detain or restrain the Petitioner;

C.      Declare that the actions taken against the Petitioner described herein violate the Due Process Clause of the Fifth Amendment to the United States Constitution, the right to be free from unreasonable seizures of the Fourth Amendment to the Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

D.      Enjoin Respondents from any further retaliatory actions against the Petitioner, or his family;

E.      Order the Respondents to reinstate the Petitioner's United States passport, communicating with the U.S. passport agency to confirm that there was no fraud in procuring the passport and that it should not be revoked;

F.      Order the Respondents to reinstate the Petitioner's Texas Driver's License, or if the same is not yet revoked despite its letter requesting revocation, to communicate with the Department of Motor Vehicles that there was no fraud in procuring the driver's license and that it should not be revoked;

G.      Order the Respondents to communicate with the State of Utah that there was no fraud in the Petitioner's United States birth certificate and if the birth certificate has been revoked

because of the actions of the Respondents, to reinstate the birth certificate;

   H. Enter monetary damages against the Respondents for the Petitioner's physical and emotional and financial damages from the Respondents' unlawful actions under color of Federal Authority and coordinated with one another in furtherance of a civil conspiracy under 42 U.S.C. §1985(3);

   I. Award Petitioner his costs and reasonable attorney's fees in this action as provided for by the Equal Access to Justice Act, 5 U.S.C., §504 and 28 U.S.C. §2412; and

   J. Grant such other relief as the Court may deem just and properl.

   DATED this 19th day of July, 2022.

       **ROBERTA M. DEUTSCH, LLC**
       Attorney for Petitioner
       1800 Corporate Blvd., N.W., Suite 310
       Boca Raton, Florida 33431
       Telephone: (561) 368-1008
       Facsimile: (561) 368-1009
       Email: robertadeutsch@aol.com


       By:___/s/ Roberta M. Deutsch___
       **ROBERTA M. DEUTSCH**
       FBN: 743828


## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed and served through EM/ECF upon Kelsi Romero, Assistant U.S. Attorney, at kelsi.romero@usdoj.gov, this 19th day of July, 2023.


       By: ___/s/ Roberta M. Deutsch___
       **ROBERTA M. DEUTSCH**

FBN: 743828