IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-62201-CIV-DIMITROULEAS

CARLOS T. HERNANDEZ STAUFERT,

        Plaintiff,

v.

CYNTHIA LAWSON,
DIRECTOR OF ICE Tae D Johnson,
Michael W. Meade, et al.,

        Defendants.

**RESPONDENTS' MOTION TO DISMISS PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS, FOR RELIEF UNDER 28 U.S.C § 2201 AND FOR DAMAGES FOR DEPRIVATION OF RIGHTS UNDER COLOR OF <u>FEDERAL AUTHORITY AND CIVIL CONSPIRACY UNDER 42 U.S.C. § 1985(3)</u>**

      COMES NOW, the Respondents, by and through the undersigned Assistant United States Attorney, and hereby files this Motion to Dismiss Petitioner's Second Amended Petition for Writ of Habeas Corpus, For Relief Under 28 U.S.C. §2201 and For Damages For Deprivation of Rights under Color of Federal Authority and Civil Conspiracy Under 42 U.S.C. § 1985(3), which requests that this Honorable Court dismiss the Second Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 [D.E. 71] in its entirety. In support of its Motion, the Respondents submit the following:

### INTRODUCTION

      The Court should dismiss the Petition in its entirety for several reasons. First, Petitioner's claim under Writ of Habeas Corpus is moot, as he is no longer "in custody." Further, this Court lacks jurisdiction to declare Petitioner a United States Citizen or order his passport returned as the only proper mechanism for such relief is a claim under § 1503 and removal proceedings are still

pending. Additionally, the *Bivens* claim is not proper. Finally, the Petitioner's claim of Conspiracy does not meet the plausibility standard under Rule 8 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Carlos Tonatiuh Hernandez Staufert, also known as Carlos Tonatiuh Hernandez, Jr. ("Petitioner" or "Hernandez") asserts that he is a citizen of the United States through a home birth in the United States, in Ogden, Utah. [D.E. 71 at ¶ 23]. A government investigation into Petitioner's birth concluded that he was instead born in Mexico. *Id*. at ¶ 40.

On September 18, 2022, U.S. Customs and Border Protection ("CBP") officers served Royal Caribbean Cruise Line's agent for Explorer of the Seas, which had arrived at the Port of Miami from Labadee, Haiti with a Notice to Present Petitioner to CBP at the Miami Seaport. [D.E. 71 at ¶¶ 44-45]. CBP thereafter processed the Petitioner for expedited removal, issued a Notice of Referral to the Immigration Judge, and detained Petitioner for transfer to U.S. Immigration and Customs Enforcement ("ICE") custody. [D.E. 71 at ¶ 45].

On September 21, 2022, the U.S. Department of State ("DOS") revoked Petitioner's U.S. passport pursuant to 22 C.F.R. § 51.62(b), after it determined that Petitioner was not a U.S. national. [D.E. 71 at ¶ 47]. On the same date, the Department of Homeland Security ("DHS") placed Petitioner in removal proceedings under 8 U.S.C. § 1229a and issued a Notice to Appear ("NTA"). *Id*. at ¶ 46. The NTA alleged that Petitioner is an arriving alien and charged him with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), as a noncitizen, who by fraud or willful misrepresentation of a material fact, procured a visa or other document, or admission into the United States or other benefit under the Act; under 8 U.S.C. § 1182(a)(6)(C)(ii), as a noncitizen who falsely represented himself to be a citizen of the United States for a purpose or benefit under

the IA or any other Federal or State law; and under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an applicant seeking admission without the required documents. *Id*.

On October 18, 2022, the immigration judge found that DHS had not met its burden of proving alienage and issued an order terminating removal proceedings. [D.E. 71 at ¶ 58]. DHS filed a motion to reconsider based on newly discovered evidence, which the court denied on November 15, 2022. *Id*. at ¶ 69. On November 15, 2022, DHS appealed the immigration judge's decision terminating removal proceedings to the Board of Immigration Appeals ("BIA"), the administrative appellate body having jurisdiction to review the matter, pursuant to 8 C.F.R. § 1003.1(b). *Id*. at ¶ 70. On July 28, 2023, the BIA issued a decision vacating the immigration judge's decision and remanding the case back to the immigration judge. *See* Exhibit A, BIA Decision.

Petitioner is no longer in the custody of ICE. On November 17, 2022, ICE released Petitioner pursuant to an order of supervision pending appeal to the BIA. *Id*. at ¶ 73. On November 29, 2022, ICE cancelled Petitioner's enrollment in the Alternative to Detention program. [D.E. 44-1]. And on December 2, 2022, ICE issued a superseding Order of Release on Recognizance, which advised the Petitioner that he was no longer required to report. [D.E. 44-2]. DHS also advised Petitioner at that time that OREC was cancelled. Exhibit B, Declaration of Supervisory Detention and Deportation Officer Corey M. McMahon. On July 21, 2023, DHS served a corrected OREC form, with all restrictions lifted, indicating that OREC was revoked in its entirety. *Id*. at ¶ 10.

On August 4, 2023, Petitioner filed a second amended petition for writ of habeas corpus. [D.E. 71].

**STANDARD OF REVIEW**

    **I.**    **Dismissal Under Federal Rule of Civil Procedure 12(b)(1).**

A district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Federal district courts are courts of limited jurisdiction: "[t]hey possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardia Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. (internal citation omitted). It is well-settled that the party invoking federal jurisdiction bears the burden of proving its existence. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.").

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge jurisdiction either factually or facially. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). With respect to a facial challenge, the allegations in the complaint are assumed to be true by the court, which then must determine whether the complaint sufficiently alleges a basis for subject matter jurisdiction. *Id*. (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). And with respect to a factual challenge, a "district court [may] consider extrinsic evidence such as testimony and affidavits." *Hoban v. Sovereign Republic of Peru*, 204 F. Supp. 3d 1368, 1370 (S.D. Fla. 2016). "Since [a

facial challenge] implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations." *Makro Capital*, 543 F.3d at 1258 (quoting *Morrison v. Amway Corp.*, 323 F.3d at 925 (11th Cir. 2003)).

## II. Dismissal Under Federal Rule of Civil Procedure 12(b)(6).

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotation marks omitted); *Boles v. Riva*, 565 Fed.Appx. 845, 846 (11th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations of fact "must be enough to raise a right to relief above the speculative level … on an assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

When presented with a Rule 12(b)(6) motion, a court begins by identifying pleadings that are no more than legal conclusions, and therefore, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, the plaintiff's complaint must allege facts to "nudge[] [his] claims across the line from conceivable to plausible…" *Twombly*, 550 U.S. at 547.

## ARGUMENT

### I.  THE HABEAS PETITION SHOULD BE DENIED AS MOOT

The case-or-controversy requirement of Article III, 2 of the United States Constitution applies through all stages of federal litigation. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (stating the parties "must continue to have a 'personal stake in the outcome' of the lawsuit" to meet the case-or-controversy requirements of Article II). For a matter to be justiciable, a petitioner must have suffered, or been threatened with, an actual injury traceable to the respondent. Moreover, it must be likely that a favorable judicial decision would redress that injury. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

As this Court is aware, the Petitioner was released from detention on November 17, 2022, and enrolled in the Alternative to Detention program, requiring him to wear an ankle monitor. [D.E. 52 at p. 4.] Thereafter, ICE cancelled the Petitioner's enrollment in the Alternative to Detention Program on November 29, 2022, and the ankle monitor was removed. [D.E. 44-1]. On December 2, 2022, ICE issued a superseding Order of Release on Recognizance, advising Petitioner that he was no longer subject to reporting requirements. [D.E. 44-2]. At that time, Petitioner was also informed that his OREC was cancelled. Exhibit B, at ¶ 7. On July 21, 2023, a corrected OREC form, with all requirement/conditions unchecked, was issued to Petitioner's counsel, reflecting that OREC was revoked in its entirety. *See* Exhibit C, corrected OREC form. In light of the fact that Petitioner is no longer detained, nor subject to reporting or any other

requirements, there remains no injury for the Court to redress; when there is nothing for the Court to remedy, the case is moot. *See Spencer*, 523 U.S. at 17.

The Petitioner sought release from his remaining requirements under OREC via his Second Amended Petition on August 4, 2023, however, Petitioner has been free of such requirements since December 2, 2022. *See* Exhibit B. Even if Petitioner argues that he was still subject to OREC because of the boxes checked on his OREC form, a corrected form with no boxes checked was issued on July 21, 2023. *See* Exhibit C. Therefore, the controversy over which the Court could arguably exercise subject matter jurisdiction for a habeas case is moot. *See Hernandez Rodriguez v. U.S. Atty. Gen.*, No. 19-CV-21647, 2019 WL 2231219, at *2 (S.D. Fla. May 23, 2019) (dismissing habeas case as moot following notification that petitioner has been released); *Ibarra v. Warden, Stewart Det. Ctr.*, No. 18-CV-167-CDL-MSH, 2019 WL 2271771 *9 (M.D. Ga. March 27, 2019) (dismissing case as moot after petitioner was released).

Where, as here, the issue that Petitioner complains of is moot, the Court lacks jurisdiction to address the matter. *See generally, Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (a moot action cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it); *Granite State Outdoor Advertising, Inc. City of Clearwater, Florida*, 351 F.3d 1112 (11th Cir. 2003) (finding no jurisdiction where a party lacks standing under Article III).

## II. THE COURT LACKS JURISDICTION OVER PETITIONER'S DECLARATION OF CITIZENSHIP CLAIM

### A. 8 U.S.C. § 1503

This Court has already addressed the fact that the Declaratory Judgment Act is procedural only and does not create remedies otherwise unavailable to the plaintiff. [D.E. 52 at p. 27] (*quoting Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003) (internal quotations omitted);

*see also Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 (5th Cir. 2000). This Court also recognized that that 8 U.S.C. § 1503(a) is "the proper remedy by which one may seek relief for a denial of a right or privilege of United States citizenship, including a judicial declaration of citizenship under the DJA and the return of a United States passport." [D.E. 52 at p. 27], *citing Cambranis v. Blinken*, 994 F.3d 457, 466 (5th Cir. 2021) ("Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national."); *Marquez v. Pompeo*, No. 20-CV-3225 (TSC), 2022 WL 43492, at *5 (D.D.C. Jan. 5, 2022) ("[C]ourts have consistently held that § 1503(a) is not simply a permissive remedy; rather, when a person within the United States seeks to challenge the Secretary of State's citizenship decision or the denial or revocation of a passport, they must do so under section § 1503(a)."); *Kiviti v. Pompeo*, 467 F.Supp. 3d 293, 315 (D.Md. 2020) ("[W]hen plaintiffs challenge the State Department's 'deprivation of U.S. passports on the allegedly erroneous conclusion that they are not citizens,' courts have consistently concluded that § 1503(a) provides 'an adequate alternative remedy' to APA review."). Although Petitioner attempts to avoid the jurisdiction-stripping provision of 8 U.S.C. § 1503 by opting not to bring a claim pursuant to that cause of action, in his Second Amended Complaint Plaintiff again "fails to meaningfully distinguish the relief he seeks from the relief offered by Section 1503(a)" [D.E. 52 at 28]; [D.E. 71 at ¶ 91].

Further, as this Court has already noted, "the issue of Plaintiff's citizenship and the revocation of his United States passport arose in connection with removal proceedings against him." [D.E. 52 at p. 28]. 8 U.S.C. § 1503(a)(1) makes clear that "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose *by reason*

*of, or in connection with* any removal proceeding under the provisions of this chapter or any other act." 8 U.S.C. § 1503(a)(1) (emphasis added); *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 398 (5th Cir. 2007) (finding no jurisdiction over a § 1503 claim where the issue of citizenship that formed the basis of the claim originated, at the least, in connection with removal proceedings).

Additionally, 8 U.S.C. § 1503(a)(2) provides a second, important limitation to claims under § 1503. It provides that "no [declaratory judgment] action may be instituted in any case if the issue of such person's status as a national of the United States … is in issue in any such removal proceeding." 8 U.S.C. § 1503(a)(2). On July 28, 2023, the BIA vacated the immigration judge's order and remanded the case back to the immigration judge for further proceedings. *See* Exhibit A.[1] As such, removal proceedings are currently pending and the issue of the Petitioner's status as a national of the United States is directly at issue in the removal proceedings. Therefore, the limitation under § 1503(a)(2) applies to this case, as the question of Petitioner's status is currently at issue in removal proceedings.

    **B.  1252(g)**

In its July 5 Order, the Court found that 8 U.S.C. § 1252(g) was inapplicable because it found Plaintiff to not be an alien, citing the immigration judge's October 18, 2022 order that DHS had not met its burden of proving alienage. [D.E. 52 at p. 25] (rejecting Defendants' jurisdiction stripping argument "at this juncture" as "Defendants do not argue that Plaintiff is an alien, nor is there any indication of same"). However, on July 28, 2023, the BIA vacated the immigration judge's October 18, 2022 order and remanded the case for further proceedings. *See* Exhibit A. As

---

[1] Petitioner has since filed a Motion for Reconsideration with the Board of Immigration Appeals which is currently pending.

such, there is no order that DHS has not met its burden, nor is there an order determining that the Petitioner is a United States citizen in effect. To the contrary, Respondents assert that Petitioner is an alien, not a United States citizen, as indicated in the Notice to Appear issued to Petitioner in September 2022, and the issue of Petitioner's alienage has been remanded to the immigration court for resolution.

Because any finding of citizenship has been vacated, and Petitioner has been charged as a noncitizen and is challenging the Respondents' decision to commence immigration court proceedings, Plaintiffs claims now fall within the purview of § 1252(g), which divests jurisdiction over petitioner's claims.

8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. Petitioner argues that the Respondents wrongfully investigated, arrested, detained, charged, and placed the Petitioner in removal proceedings. [D.E. 71 at ¶ 102]. As demonstrated by the commencement of removal proceedings, Respondents take the position that Petitioner is an alien pursuant to 8 U.S.C. § 1252(g) and this Court lacks jurisdiction over Petitioner's Second Amended Petition.

The Eleventh Circuit has addressed the applicability of 8 U.S.C. § 1252(g) in a number of cases that mirror the factual circumstances here. In *Gupta v. McGahey*, the court considered whether a district court lacked jurisdiction to consider an alien's challenge under *Bivens*, to the constitutionality of his arrest and detention by immigration agents … related to the initiation of removal proceedings against him. *Gupta v. McGahey*, 709 F.3d 1062, 1063-64 (11th Cir. 2013). The court concluded that the district court lacked jurisdiction under § 1252(g) to consider those

claims, as they pertained to actions taken to secure him pending a final removal determination. *Id*. at 1065.

Additionally, in *De La Teja v. United States*, the Eleventh Circuit considered whether a district court lacked jurisdiction under § 1252(g) to consider an alien's habeas corpus challenge under 28 U.S.C. § 2241 to the immigration agency's initiation of removal proceedings against him… The court concluded that the district court lacked jurisdiction under § 1252(g) to consider the claim, as it challenged the agency's "decision" to "commence proceedings". *De La Teja v. United States*, 321 F.3d 1357 (11th Cir. 2003). A plaintiff's allegation that he or she is a U.S. citizen is insufficient to avoid the jurisdiction stripping provision of 8 U.S.C. § 1252(g). Otherwise, any individual in removal proceedings could avoid 8 U.S.C. § 1252(g) and engage in federal litigation simply by including a pleading that they are a U.S. citizen in their Complaint.

### III. COUNT THREE OF THE SECOND AMENDED PETITION HAS ALREADY BEEN DEEMED BY THIS COURT AS NOT RIPE FOR REVIEW

Petitioner asserts a claim for relief under 28 U.S.C. § 2201 asking this Court to reinstate the Petitioner's U.S. Birth Certificate and Texas Driver's license. Petitioner has failed to provide any evidence that either the Birth Certificate or Driver's license has actually been revoked. Rather, Petitioner is asking the Court to address something that has not happened yet. Further, this Court has already addressed this issue *sua sponte* in its Order dated July 5, 2023. [D.E. 52]. Petitioner amended his Petition to attach the routine letters sent by the Department of State to the State of Utah Department of Vital Statistics, and the State of Texas Department of Motor Vehicles, but has no provided no evidence that any action was taken after those letters were sent. As this Court pointed out, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*; *see Texas v. United States*, 523 U.S.

296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 58-581 (1985)). As the Petitioner has provided no evidence that either his birth certificate or driver's license has actually been revoked, such claim is not ripe for review and must be dismissed.

### IV.    NO *BIVENS* REMEDY IS AVAILABLE IN THIS CASE

Petitioner attempts to bring a *Bivens* action against Nelson Perez (Chief Counsel, Office of the Principal Legal Advisor, Miami Field Office), Eric Aurelias (Deputy Chief Counsel, Office of the Principal Legal Advisor, Miami), Carlos Lopez (Deputy Chief Counsel, Office of the Principal Legal Advisor, Miami), Evagelia Solomos (Assistant Chief Counsel, Office of the Principal Legal Advisor, Miami), Mitchell Diaz (Assistant Field Office Director, Enforcement and Removal Operations, Miami), Authur McLaughlin (Deportation Officer, Enforcement and Removal Operations, Miami) and Teddy Thomas Towner, III (Special Agent, U.S. Department of State, Diplomatic Security Service). Petitioner is alleging violations of his fourth, fifth, and sixth amendment rights, related to the detention and commencement of removal proceedings against the Petitioner. [D.E. 71 at ¶ 108]

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court authorized a damages action against federal officials for alleged violations of the Fourth Amendment. The court recognized two further causes of action under *Bivens*, first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979) and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980). Since these cases, the Court has not implied additional causes of action under the Constitution. *See Egbert v. Boule*, 142 S. Ct. 1793 (2022). In fact, the Supreme Court has emphasized in recent years that recognizing a cause of action under *Bivens* is "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120 (2017).

When analyzing a proposed *Bivens* claim, the court has framed the inquiry as proceeding in two steps: (1) does the case present a "new *Bivens* context"— is it "meaningfully" different from the three cases in which the Court has implied a damages action; and (2) if the claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id*. (internal quotation marks omitted). As the Court noted in *Egbert*, these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. Under the *Egbert* test, a court should dismiss a *Bivens* claim if "there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858).

In *Egbert*, the Supreme Court cautioned that extending the *Bivens* remedy beyond the original facts of Bivens would be an exceedingly rare result. There, the Court determined the plaintiff's claims arose in a new context even though the case involved "similar allegations of excessive force" and "almost parallel circumstances" to those alleged in *Bivens*. *Egbert*, 142 S. Ct. at 1804–05. Petitioner's *Bivens* claims here also involve a new context and a new category of defendants.

The Eleventh Circuit directly addressed for the first time whether to imply a *Bivens* remedy in the immigration context in *Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194 (11th Cir. 2016). In *Alvarez*, the court held that the plaintiff "cannot recover damages under *Bivens* for constitutional violations that caused him to endure prolonged immigration detention." *Id*. To support its decision, the court elaborated that "[t]he Immigration and Nationality Act is 'an elaborate remedial system that has been constructed step by step, with careful attention to

conflicting policy considerations.'" *Id.* (*citing Bush v. Lucas*, 462 U.S. 367 (1983)). The court went further to discuss the fact that detained aliens can seek a petition for writ of habeas corpus to challenge detention and that the availability of habeas relief, when paired with a detailed regulatory scheme constitutes special factors counseling against recognizing a new *Bivens* cause of action. *Id.* (*citing Rauschenberg v. Williamson*, 785 F.2d 985, 987-88 (11th Cir. 1986)).

The Court in *Alvarez* did a deep dive into the statutory scheme of the Immigration and Nationality Act and found that Congress has amended the Act on no less than seven occasions. *Alvarez*, 818 F.3d, at 1210. The Eleventh Circuit found that given the "frequent attention that the legislature has given to the complex scheme governing removal and its review procedures over many years, we are satisfied that Congress has weighed the policy considerations in favor of and against providing damages." *Id.*; *see Schweiker v. Chilicky*, 487 U.S. 412 (1988) (explaining that because "[c]ongressional attention… has… been frequent and intense" and "[a]t each step, Congress chose specific forms and levels of protection for the rights of persons affected" it was clear that the failure to provide for damages was intentional). The Court concluded that the "complexity of the Immigration and Nationality Act, and Congress's frequent amendments to it, suggest that no *Bivens* remedy is warranted." *Id*.

The Court concluded special factors exist that would counsel hesitation in the immigration context. First, the court recognized the "breadth and detail of the Immigration and Nationality Act itself counsels in favor of hesitation." *Id.* (*citing Mirmehdi v. U.S.*, 689 F.3d 975 (9th Cir. 2012)). As the Supreme Court has cautioned, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," thus constitutes a "special factor [ ] counseling hesitation." *Schweiker*, 487 U.S. at 423. Another important special factor recognized

by the Eleventh Circuit in the immigration context is the "importance of demonstrating due respect for the Constitution's separation of powers." *Alvarez*, 818 F.3d at 1211. "The Constitution gives Congress the power to 'establish a uniform Rule of Naturalization,'" *De La Paz*, 786 F.3d at 379 (*quoting* U.S. Const., art. I, § 8, cl. 4), and the Executive possesses "inherent power as sovereign to control and conduct relations with foreign nations," *id.* (*quoting Arizona v. U.S.*, 567 U.S. 387 (2012); *see also Arar v. Ashcroft*, 585 F.3d 559 (2nd Cir. 2009) ("The Supreme Court has expressly counseled that matters touching upon foreign policy and national security fall within 'an area of executive action in which courts have long been *hesitant* to intrude' absent congressional authorization." (*quoting Lincoln v. Vigil*, 508 U.S. 182 (1993)). As the Eleventh Circuit has recognized, "[t]hese branches are generally better 'situated to consider sensitive foreign policy issues' that immigration cases may implicate, and involvement of the courts into their domain can in some instances 'undermine the Government's ability to speak with one voice in this area.'" *Alvarez*, 818 F.3d at 1211 (*quoting Munaf v. Geren*, 553 U.S. 674 (2008)); *see also Mirmehdi*, 689 F.3d at 982-83 (noting that "immigration issues 'have a natural tendency to affect diplomacy, foreign policy, and the security of the nation,'" and may involve "the disclosure of foreign policy objectives" (*quoting Arar*, 585 F.3d at 574, and *AADC*, 525 U.S. at 490)).

The Supreme Court has also declined to extend *Bivens* causes of action into the immigration and boarder control context. In *Hernández v. Mesa*, 140 S. Ct. 735 (2020), the Supreme Court declined to create a damages remedy for an excessive force claim against a Border Patrol agent who shot and killed a Mexican national across the border. The Court concluded that "regulating the conduct of agents at the border unquestionably has national security implications," such that the "risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Id.* at 747. In *Egbert*, the Supreme Court found that the plaintiff's ability to

file a grievance with a Border Patrol agent's employing agency was enough to foreclose extending *Bivens* relief. The Court explained that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy." 142 S. Ct. at 1807. That is "true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Id*. (*quoting Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Petitioner is attempting to bring *Bivens* claims for violation of his Fourth, Fifth and Sixth Amendment rights against employees of the Department of Homeland Security and the Department of State, for actions taken in connection with Petitioner's removal proceedings. [D.E. 71 at ¶¶ 106-109]. As discussed above, the Eleventh Circuit has already addressed the idea of creating a new *Bivens* context in the immigration setting and has rejected such claims. *See Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194 (2016). Because Plaintiffs' claims arise out of immigration enforcement activities at an international border, they necessarily implicate national security and foreign affairs. *Hernández*, 140 S. Ct. at 746. Additionally, the Supreme Court concluded that courts are not "competent to authorize a damages action . . . against Border Patrol agents generally." *Egbert*, 142 S. Ct. at 1806. The *Bivens* claim that Petitioner is attempting to bring in this case would create a new *Bivens* context, and there are significant special factors that would counsel against creating such, as addressed by the Eleventh Circuit and discussed more fully above. As such, Count Five of Second Amended Petition should be dismissed with prejudice.

## V.    PETITIONER FAILS TO STATE A CONSPIRACY CLAIM, AND IN THE ALTERNATIVE, THE CLAIM SHOULD BE DISMISSED BECAUSE RESPONDENTS ARE ENTITLED TO QUALIFIED IMMUNITY.

To state a claim for conspiracy under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) and act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed.Appx. 136, 140 (11th Cir.2011) (citing *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir.1996)), *cert. denied*, ––– U.S. –––, 132 S.Ct. 577, 181 L.Ed.2d 441 (2011). The Eleventh Circuit has held that "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). Additionally, to satisfy the second element, the plaintiff must allege that the conspirators were motivated by "racial, or otherwise class-based, invidiously discriminatory intent." *Almon v. Sandlin*, 603 F.2d 503, 505 (5th Cir. 1979); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 628 (11th Cir. 1992).

Petitioner in this case has made no factual allegations which would support an inference that Respondents conspired or agreed among themselves or with someone or failed to stop others from conspiring against him. *See Mickens v. Tenth Judicial Circuit*, 1818 Fed.Appx. 865, 876 (11th Cir. 2006) (because plaintiff failed to allege with specificity an agreement between defendants to deprive plaintiffs of their rights, § 1985(3) claim was due to be dismissed); *Montford v. Moreno*, No. 04-12909, 2005 WL 1369563, at *7 (11th Cir. June 9, 2005) (complaint alleged only conclusory allegations of conspiracy and failed to allege any evidence that defendants reached an understanding to violate plaintiff's rights, warranting dismissal of § 1985(3) claim). Further,

Petitioner does not allege any facts whatsoever that any of the events at issue were in anyway motivated by racial animus. As such, the Conspiracy claim in the Second Amended Complaint is insufficient to state a plausible claim for relief and must be dismissed.

Respondents are also entitled to qualified immunity on Petitioner's § 1985 claims because Respondents "reasonably might not have known that their planning could be labeled a conspiracy under [Section 1985(3)]." *K.O. v. U.S. Immigration and Customs Enforcement*, 468 F.Supp.3d 350 (D.C. June 23, 2020). Petitioner's § 1985 claims fail because they do not allege any conspiracy between legally distinct persons. Rather, Petitioner alleges that Executive Branch officials worked together to deprive him of his rights. As *Abbasi* explained, "[u]nder this principle – sometimes called the intracorporate-conspiracy doctrine – an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Abbasi*, 137 S. Ct. at 1867. This doctrine is "derived from the nature of the conspiracy prohibition," which requires an agreement between "two or more separate persons." *Id.* But "[w]hen two agents of the same legal entity make an agreement in the course of their official duties . . . as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Id.; see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("[N]ot unlike a multiple team of horses drawing a vehicle under the control of a single driver.").

Drawing on these principles, *Abbasi* discussed the viability of a Section 1985(3) claim against multiple "Executive Branch" officials for discussions that "were the preface to, and the outline of, a general and far-reaching policy." 137 S. Ct. at 1867. Although the Court declined to decide on the applicability of intracorporate-conspiracy doctrine with reference to Section 1985(3) conspiracies, the Court found the law was "sufficiently open" that the government employees were

entitled to qualified immunity. *Id*. at 1868–69; *accord Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1060 (9th Cir. 2020) (holding that FBI agents were entitled to qualified immunity against liability against a Section 1985(3) claim). Just as in *Abbasi*, many of the Respondents here work or worked in the same agencies, and all Respondents worked for the same branch of government, raising similar intracorporate-conspiracy issues. *See K.O.*, 2020 WL 3429697, at *13 ("If the intracorporate-conspiracy doctrine can apply to civil rights claims—and *Abbasi* states that it might be able to—there is little reason to think its reach would stop at cross-department communications within the scope of federal officers' official duties."). As with the "team of horses" analogy mentioned in *Abbasi*, executive agencies and departments all work together under the leadership of the White House and, ultimately, the President. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2203 (2020) ("[I]ndividual executive officials . . . wield significant authority, but that authority remains subject to the ongoing supervision and control of the elected President."). Because the law on this point is no clearer now than it was at the time *Abbasi* was decided, Respondents are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Second Amended Petition in full.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1 and this Court's Order [D.E. 76], the undersigned certifies that the undersigned has conferred with Petitioner's counsel on August 4, 2023 via telephone, and that the Parties were unable to resolve the dispute.

Respectfully submitted,

**MARKENZY LAPOINTE**
**United States Attorney**

By: **/s/ Kelsi R. Romero**

                          Assistant United States Attorney
                          United States Attorney's Office
                          Southern District of Florida
                          Special Bar No. A5502758
                          99 N.E. 4th Street
                          Miami, Florida 33132-2111
                          Tel. (305) 961-9159
                          E-mail: Kelsi.Romero@usdoj.gov